**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|  |  |
|---|---|
| **DEBORAH RIVA, ROBERT CORRIERI, and SENTRY INSURANCE, on behalf of themselves and all others similarly situated,** |  )<br>)<br>)<br>) |
| **Plaintiffs,** | )<br>)<br>) |
| **v.** | )<br>) |
| **ASHLAND, INC. (d/b/a Ashland Chemical Company, d/b/a Ashland Specialty Chemical Company, d/b/a Ashland Distribution Company),** | )<br>)<br>)<br>)    **Civil Action No. 09-12074-DJC**<br>) |
| **Defendant,** | )<br>)<br>) |
| **v.** | )<br>)<br>) |
| **C.A.I., Inc.,** | )<br>)<br>) |
| **Third-Party Defendant.** | )<br>)<br>) |

_____

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                  December 13, 2011

**I.      Introduction**

          This is a putative class action arising out of the November 22, 2006 explosion at an ink and paint manufacturing facility in Danvers ("Danvers facility").  Plaintiffs and proposed class representatives, Deborah Riva ("Riva"), Robert Corrieri ("Corrieri") and Sentry Insurance ("Sentry") (collectively, "Named Plaintiffs"), seek damages arising from the explosion and allege that Defendant Ashland, Inc. ("Ashland") supplied, combined and maintained certain highly explosive chemicals at the Danvers facility in such a way that caused the explosion.  The Named

Plaintiffs assert claims against Ashland for strict liability, negligence, public nuisance, breach of implied warranty of merchantability and violations of Mass. Gen. L. c. 93A.  Ashland has brought third-party claims against C.A.I. Inc. ("C.A.I.") in this action based upon certain alleged indemnification and contribution rights against C.A.I. in connection with the Named Plaintiffs' claims against Ashland.  The Named Plaintiffs have now moved for class certification.   For the reasons set forth below, specifically that the Named Plaintiffs have failed to satisfy the showing of typicality and adequacy of representation required under Fed. R. Civ. P. 23(a), the motion for class certification is DENIED.

## II.     Factual and Procedural Background

### A.     The Explosion at the Danvers Facility

Ashland is an international chemical manufacturer and supplier.  (First Amended Complaint ("FAC") ¶ 17).   At the time of the explosion, Ashland was the primary provider of chemicals to C.A.I., a manufacturer of commercial printing inks, and Arnel Co., Inc. ("Arnel"), a manufacturer of paint products.  (Id. ¶ 6).  C.A.I. and Arnel both operated from the Danvers facility.  (Id.).   On November 21, 2006, Ashland delivered 5,000 to 6,000 gallons of flammable chemicals including Heptane, Iso Propyl and n-Propyl Alcohol to C.A.I. at the Danvers facility.  (Id. ¶ 28).  Ashland and C.A.I. worked jointly at the facility to offload the chemicals from Ashland's tanker truck to C.A.I.'s storage/process tanks.  (Id. ¶ 29).  The Named Plaintiffs allege that during this process, C.A.I. and Ashland produced a highly explosive chemical mixture in a particular C.A.I. storage tank, known as "Mix Tank 3," that was not appropriate to receive, store or process such chemical mixture.  (Id.).  Within a matter of hours, the chemical mixture in Mix Tank 3 resulted in a solvent vapor cloud formation of Heptane, Iso Propyl and n-Propyl Alcohol within the facility.  (Id. ¶ 30).  This vapor

cloud formation resulted in a vapor cloud explosion on November 22, 2006 that destroyed the Danvers facility and caused over $30 million dollars in property damage to the surrounding Danversport community.  (Id. ¶¶ 30, 31).

The Named Plaintiffs allege that Ashland knew about the nature of C.A.I. and Arnel's business, their products, the Danvers facility and the highly explosive nature of the chemicals and chemical mixtures that Ashland continuously provided and maintained at the Danvers facility as well as the foreseeable risks of vapor cloud explosions and the destruction to the surrounding Danversport neighborhood.  (Id. ¶ 17).   The Named Plaintiffs further claim that Ashland, among other things:   did not inquire or determine whether C.A.I. or Arnel had a license or permit to purchase, store, combine, use or maintain the quantities and types of chemicals Ashland provided; failed to disclose the scope and magnitude of the explosivity risks and hazards of the chemicals and chemical mixtures that it was providing; delivered chemicals into improper, non-conforming and unlawful containers and vessels; delivered chemicals into an unsafe environment with foreseeable risks of a devastating explosion; and participated in the manufacture of an explosive chemical mixture in a C.A.I. storage/process tank that was not appropriate to receive, store or process such chemical mixture and that resulted in the vapor cloud explosion.  (Id. ¶ 28).

### B.      State Court Proceedings

#### 1.      The Borelli Class Action and the Danversport Trust

On December 15, 2006, a class action complaint was filed against C.A.I. and Arnel in Essex Superior Court, Borelli, et al. v. C.A.I., Inc., et al., No. 06-2382 ("Borelli").  Ashland Opp. at 5.  As initially alleged, the putative class in that case was defined as "all persons and entities who sustained or allegedly sustained damages or injuries as a result of the explosion that occurred at Defendants'

facility on November 22, 2006." Id.  Ashland was not named as a defendant in Borelli or in any of the additional suits brought against C.A.I., Arnel and its insurers by the subrogated insurers of the property owners who sustained damages as a result of the explosion.

In connection with the Borelli action, on June 1, 2007, certain households and businesses in the Danversport area in close proximity to the site of the explosion created the Danversport Trust ("Trust") for the benefit of those "whose real estate Property . . . was directly impacted by the explosion and fire at the [Danvers facility] . . . or individuals who were otherwise on the Property directly impacted by the incident."  McConville Aff., Ex. B (Declaration of Trust) § 6.  The purpose of the Trust was to serve as a vehicle for resolving "all actual or potential legal claims of Beneficiaries for personal injury, property damage, and[/]or consequential or residual damages that the Beneficiaries may have against" parties.  Id. at § 8.  Ashland notes, and the Named Plaintiffs do not dispute, that there were 269 beneficiaries of the Trust.  See Ashland Opp. at 3, 6; Tr. 8:24-9:6, 12:17-25, see Andrew R. McConville Affidavit ("McConville Aff."), Ex. B (Declaration of Trust for The Danversport Trust).

### 2.   Borelli Settlement Agreement and Indemnification of C.A.I.

On October 22, 2008, the Essex Superior Court certified the Borelli class and approved a comprehensive settlement agreement ("settlement agreement") entered into by C.A.I., among other released parties, and (a) the Borelli class; and (b) the "Subrogated Group"; and (c) the Trust. McConville Aff., Ex. D (settlement agreement).  The Subrogated Group was comprised of 61 insurance companies that had paid in excess of $20 million to satisfy claims of certain insured class members in connection with the damages sustained as a result of the explosion.  (McConville Aff., Ex. D).  Not all Borelli class members were Trust beneficiaries or part of the Subrogated Group.

4

See id. at §§ 2(j), 4.  Pursuant to the release in the settlement agreement, the Borelli class, the Trust

beneficiaries and Subrogated Group agreed, among other things, to release all claims against C.A.I.

arising out of the explosion.  Id. at § 4.  The settlement agreement also contains an indemnification

provision which applies to Trust beneficiaries and the Subrogated Group only.  The indemnification

provision states:

> Each individual member of the Subrogated Group and Trust [all trust
> beneficiaries and representatives] (collectively, the 'Indemnitors')
> agrees to defend, hold harmless and indemnify each of the Released
> Parties from any and all claims in the nature of third-party claims for
> indemnity or contribution which might be brought by Non-Released
> Parties against whom actions are brought by any individual
> Indemnitor(s) to the extent that any such individual Indemnitor(s)
> initiated (or subsequently joined in) the litigation or claim against the
> Non-Released Party which, in turn, caused the contribution or
> indemnity claim to be brought against the Released Party.

McConville Aff., Ex. D at § 5.[1]  This indemnification provision does not require Borelli class

members who were not in the Trust or in the Subrogated Group to indemnify C.A.I.   Rather, the

settlement agreement provides that the remaining Borelli class members "expressly reserve[d] the

right to initiate individual, class, or collective actions against any or all such Non-Released Parties."

McConville Aff., Ex. D at § 4.  The settlement agreement defines "Non-Released Parties" as "all

persons, entities or other parties other than the Released Parties, and expressly includes all third-

party vendors and suppliers to Arnel and/or C.A.I."  Id. at § 2.

---

[1]The settlement agreement defines "claims" as "any past, present or future obligations,
claims, demands, suits, letters, requests for information . . . complaints, counter-claims, cross-
claims . . . requests, notices . . . and any other assertions of costs or liability of any kind . . .
whether legal or equitable, and whether currently known or unknown . . . foreseen or unforeseen,
and whether sounding in tort, toxic tort, contract, equity, nuisance . . . negligence, strict liability
or any other . . . cause of action, duty or obligation of any sort, that (i) arise from or are related in
any way to the Explosion, and (ii) have been, could have been and/or could or may be asserted
against any member of the Released Parties."  Id. at § 2(k).

Borelli class counsel, who also serves as counsel for the Named Plaintiffs in the present action, explained the terms of the settlement agreement in the class notice sent to all potential Borelli class members.  (McConville Aff., Ex. C).  The paragraph entitled, "10. WHAT AM I GIVING UP OR RELEASING?" states:

> The settlement provides that you may not sue, or be part of any other lawsuit against [C.A.I.] or against their past, present and future parent companies, subsidiaries, employees, owners . . . assigns, entities in which any of the above have a controlling interest, and their insurers, for any claims arising out of or relating to the Explosion.  The settlement does not result in the release of any potential claims against unaffiliated third parties such as Defendants' vendors and suppliers.

McConville Aff., Ex. C at ¶ 10.  The settlement agreement further provided that the defendants' insurers in Borelli pay $7,000,000 into an interest bearing escrow account.  McConville Aff., Ex. D at § 3.  Of that total, $1,475,000 was to be distributed to the Borelli class members and the Trust, and the remaining $5,525,000 was to be paid to the Subrogated Group.  McConville Aff., Ex. D at §§ 3, 7, 7.2, 9.2.

A Claims Review Committee was then established to determine, on a case-by-case basis, which members of the Borelli class would share in the settlement funds and to calculate the pro rata dollar amount that each claimant would receive.  (McConville Aff., Ex. E (Letter for Attorney Lagorio to Essex Superior Court Clerk dated April 21, 2009)).  The Claims Review Committee reviewed approximately 250 claim forms submitted by Borelli class members which described their claims for property damages, business revenue loss, relocation costs, personal injury and/or emotional distress resulting from the explosion.  (McConville Aff., Ex. E; see also McConville Aff., Ex. C at 7 (Blank Danvers Explosion Sworn Claim Form)).  Borelli class members, including the Named Plaintiffs in the present action, received compensation resolving their claims in that matter.

6

C.     **The Instant Class Action**

On November 16, 2009, Plaintiffs Riva and Corrieri filed the instant putative class action against Ashland in Essex Superior Court seeking to recover monetary damages from Ashland to compensate them for losses caused by the explosion and asserting claims for strict liability negligence, public nuisance and breach of warranty of merchantability.  The matter was subsequently removed to this Court. (D. 1).  Ashland filed a third-party complaint against C.A.I. on April 14, 2010, asserting claims for, among other things, contractual indemnity and declaratory judgment.  (D. 14).  In its answer, C.A.I. submitted a counterclaim against the Plaintiffs for contractual indemnification.  (D. 17).  The Court (Wolf, C.J.) denied the Plaintiffs' subsequent motion to dismiss the third-party counterclaim.  (D. 37).  Plaintiffs then amended the complaint to add the third named Plaintiff Sentry and asserted claims of strict liability (Count I), negligence (Count II), public nuisance (Count III), breach of warranty of merchantability (Count IV) and violation of Mass. Gen. L. c. 93A (Count V) against Ashland.  (D. 38).  Soon thereafter, the parties conducted discovery concerning class certification and the Named Plaintiffs moved to certify the class.  (D. 54).   The Court heard oral argument on the motion on October 20, 2011.

III.   **Discussion**

A.     **Putative Class Representatives**

1.     **Riva**

Riva alleges that her residence and personal property in Danvers were destroyed by the explosion.  (FAC at ¶ 3).   Although Riva was not a Trust beneficiary, she was a member of the Borelli class and received $2,100 from the Claims Review Committee to resolve her claims in that matter.  McConville Aff., Exs. B (list of beneficiaries), J (Riva Dep. at 21-22).  Riva assigned her

rights to MiddleOak Insurance Company ("MiddleOak"), a company that was included in the Subrogated Group in <u>Borelli</u> and was a party to the settlement agreement.   McConville Aff., Ex. K (February 7, 2009 e-mail from Nicholas Kelley), Ex. D (list of insurance companies in subrogated group attached as exhibit A).

In the instant action, Riva asserts no claims for personal injuries or negligent infliction of emotional distress or for damages to her residence or vehicle.  (McConville Aff., Ex. J (Riva Dep. at 47-49, 68, 75-76)).  Instead, her claims in the instant action are for damage to personal property caused by the explosion that was not covered by her insurance carrier.  <u>Id.</u> at 47-48, 68.

### 2.      Corrieri

Corrieri alleges that his uninsured boat was damaged in the explosion while it was stored at Liberty Marina in Danvers.   (FAC at ¶ 4).  Like Riva, Corrieri is neither a Trust beneficiary nor is he asserting individual claims for damages to real property, for personal injuries or negligent infliction of emotional distress.  (McConville Aff., Ex. L (Corrieri Dep. at 37-38, 56)).  Although Corrieri testified at his deposition that he was uncertain whether he was a member of the <u>Borelli</u> class, he testified that he received $5,000 as a settlement payment in the prior class action for damage to the same boat for which he now asserts claims against Ashland in the instant action.  <u>Id.</u> at 14-15, 74-77.  Corrieri's claims are related solely to the damage to his boat.  <u>Id.</u> at 36-38.

### 3.      Sentry

Sentry alleges that it sustained losses due to its insurance settlement payments to its insureds, George and Joyce Merritt (the "Merritts"), for damage to their property in Danvers as a result of the explosion.  (FAC at ¶ 5).  Sentry claims that its role in the instant putative class action is to represent Sentry and the Merritts to recover what it had paid to settle the Merritts' insurance claims under their

homeowners' insurance policy.  (McConville Aff., Ex. M (Riley Sutton Dep. at 36)).

Sentry is neither a Trust beneficiary nor a member of the Subrogated Group.   <u>See</u> McConville Aff., Exs. A (list of insurance companies in the Subrogated Group) and B (list of Trust beneficiaries) attached to settlement agreement (McConville Aff., Ex. D).  However, Sentry was a <u>Borelli</u> class member and received approximately $41,000 pursuant to the Settlement Agreement. (McConville Aff., Ex. M (Sutton Dep.) at 85-86).

**B.**      **Requirements for Class Certification**

"[D]istrict courts have broad discretion to grant or deny class certification."  <u>McCuin v. Sec'y of Health and Human Servs.</u>, 817 F.2d 161, 167 (1st Cir. 1987).   Before certifying a class, the Court must evaluate whether the Named Plaintiffs seeking class certification have satisfied their burden of proving all elements of Rule 23(a) and one Rule 23(b) requirement.  <u>Smilow v. Sw. Bell Mobile Sys., Inc.</u>, 323 F.3d 32, 38 (1st Cir. 2003).  To satisfy the requirements of Rule 23(a), plaintiffs must establish that:  (1) "the class is so numerous that joinder of all members is impracticable" (numerosity), (2) "there are questions of law or fact common to the class" (commonality), (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality), and (4) "the representative parties will fairly and adequate protect the interests of the class" (adequacy).  FED. R. CIV. P. 23(a)(1)-(4); <u>Wal-Mart Stores, Inc. v. Dukes</u>, ___ U.S. ___, 131 S. Ct. 2541, 2548 (2011);  <u>In re New Motor Vehicles Canadian Export Antitrust Litig.</u>, 522 F.3d 6, 19 (1st Cir. 2008).

Class action plaintiffs must also satisfy at least one of the three requirements listed in Rule 23(b).  The Named Plaintiffs here rely on Rule 23(b)(3), which applies when "questions of law or fact common to class members predominate over any questions affecting only individual members"

and a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy."

The Court "must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class." Smilow, 323 F.3d at 38 (citing Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982)).   In doing so, a court may "probe behind the pleadings . . . to formulate some prediction as to how specific issues will play out."   In re New Motor Vehicles, 522 F.3d at 17 (internal citations and quotation marks omitted); Wal-Mart, 131 S. Ct. at 2551.  This is because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  Wal-Mart, 131 S. Ct. at 2552 (quoting Falcon, 457 U.S. at 160).  The Court's "inquiry into the merits of a case at the class certification stage should only be conducted 'to the extent that the merits overlap the Rule 23 criteria.'"   In re Boston Scientific Corp. Sec. Litig., 604 F. Supp. 2d 275, 280-81 (D. Mass. 2009) (quoting In re New Motor Vehicles, 522 F.3d at 24).  A court may also consider affirmative defenses against class members in conducting its analysis.  Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 295 (1st Cir. 2000) (concluding the lower court did not abuse its discretion in granting class certification where it considered the statute-of-limitations defense in Rule 23(b)(3)'s predominance analysis but nonetheless determined that the statute-of-limitations argument did not defeat class certification).

Invoking Rule 23(a)(1)-(4) and (b)(3), the Named Plaintiffs have moved to certify a class consisting of "all persons and entities who sustained damages as a result of the explosion that occurred at 126 Water Street in Danvers, Massachusetts on November 22, 2006" and seek an order appointing them as class representatives and their counsel as class counsel.  (D. 54, Pl. Mot. at 1-2).

### C.     The Proposed Class

1.      **Analysis of Rule 23(a) Requirements**

a.      **Numerosity**

The numerosity requirement of Rule 23(a)(1) is satisfied when "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  To determine whether numerosity is satisfied, the Court must assess the size of the putative class.  McLaughlin v. Liberty Mut. Ins. Co., 224 F.R.D. 304, 307 (D. Mass. 2004).  The Court may "draw reasonable inferences from the facts presented to find the requisite numerosity." McCuin, 817 F.2d at 167.   Here, the Named Plaintiffs rely on the State Fire Marshal's Report ("Report") from the Borelli action, Ex. A to the Affidavit of Peter A. Lagorio ("Lagorio Aff.") to show numerosity.  The Report states that an "excess of two hundred and fifty residences, twenty businesses and one school . . . were damaged as a result of this explosion."   Report at ¶ 11.   The Named Plaintiffs also point to the chart created by their counsel listing more than 350 members of the class in the Borelli action who submitted claims for damages caused by the explosion in the Borelli action.  (Lagorio Aff., Ex. B.)

Ashland argues that the Court should not rely upon the Named Plaintiffs' offer of proof because the chart and the Report are inadmissible.  (Ashland Opp. at 12 & n. 4).  See  DeRosa v. Mass. Bay Commuter Rail Co., 694 F. Supp. 2d 87, 95 (D. Mass. 2010) (noting that "[t]he court considers only admissible evidence in determining whether Rule 23's requirements are met").  Even if the Court accepts the argument as to both documents, the settlement agreement relied upon by both parties, lists all Trust beneficiaries and members of the Subrogated Group in the Borelli action who allegedly suffered damages caused by the explosion.  There were 269 Trust beneficiaries and 61 insurance companies (Subrogated Group) there who would be putative class members in the instant action. (McConville Aff., Ex. D (settlement agreement)); see McConville Aff., Ex. E (Letter

11

from the Law Office of Peter A Lagorio to the Clerk of Essex Superior Court regarding the <u>Borelli</u>

matter, reporting that 250 claims had been submitted to the Claims Review Committee).  The

definition of the class in the <u>Borelli</u> action against C.A.I. is substantively identical to that of the class

here.  <u>Compare</u> Ashland Opp. at 5 (citing <u>Borelli</u> pleading defining class as "all persons and entities

who sustained or allegedly sustained damages or injuries as a result of the explosion that occurred

at Defendants' facility on November 22, 2006") <u>with</u> <u>Riva</u> First Amended Complaint (defining class

as "all persons and entities who sustained damages as a result of the explosion that occurred at 126

Water Street in Danvers, Massachusetts on November 22, 2006").  The Trust beneficiaries and

members of the Subrogated Group are putative class members in this action since they fit within the

class proposed by the Named Plaintiffs[2] - i.e., those who allegedly suffered damages as a result of

the November 2006 explosion purportedly caused by Ashland's misconduct.

To ignore the <u>Borelli</u> action and the settlement agreement in that case, which is essentially

what Ashland has requested the Court to do at least in regard to numerosity, would be contrary to

the First Circuit's directive that district courts "may draw reasonable inferences from the facts

presented to find the requisite numerosity."  <u>McGuin</u>, 817 F.2d at 167; <u>see</u> <u>In re Evergreen Ultra</u>

<u>Short Opportunities Fund Sec. Litig.</u>,  275 F.R.D. 382, 388 (D. Mass. 2011) (finding numerosity

satisfied where Court reasonably inferred there were at least hundreds of class members due to the

number of shares outstanding and transactions during the class period).  Because joinder of the

putative class members here who allegedly suffered damages as a result of the explosion would be

---

[2]It appears that by the time of the Second Amended Complaint in <u>Borelli</u>, the Subrogated Group was explicitly excluded from the <u>Borelli</u> class.  McConville Aff., Ex. A at ¶ 10.  No such exclusion has been made here as to the definition of the putative class.

impracticable, the numerosity requirement is satisfied.  Accordingly, the Court finds the proposed class meets the numerosity requirement.

Beyond disputing the admissibility of the Named Plaintiffs' offer of proof, Defendants spend considerable time arguing that Plaintiffs have not met the numerosity requirement.  Ashland contends that the Trust beneficiaries (acting on behalf of households) and the Subrogated Group cannot bring this action because they signed the <u>Borelli</u> settlement agreement containing the indemnification provision.  They contend further that the vast majority of the proposed class members who were not Trust beneficiaries bound by that agreement lack standing to pursue this action because they assigned their claims to their insurers after their insurers paid property damage claims arising out of the explosion.[3]  Ashland argues that without the number of households of Trust Beneficiaries, the Subrogated Group and those who assigned their rights away to those companies, Plaintiffs have not shown which class members would remain to satisfy the numerosity requirement.

At base, Ashland's position urges the Court to find that the Indemnitors who have "indemnified themselves out of existence" and other insureds who assigned their rights away to insurance companies should be precluded from being counted in the numerosity calculus for the purposes of certification.  The Court recognizes that it "'must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'"  <u>Waste Mgmt. Holdings, Inc.</u>, 208 F.3d at 295 (quoting <u>Castano v. Am. Tobacco Co.</u>, 84 F.3d 734, 744 (5th Cir. 1996)).  In doing so, "some inquiry into the merits . . . is appropriate to the extent the merits overlap the Rule 23 criteria." <u>In re New Motor Vehicles</u>, 522

---

[3]Ashland proffers evidence that 196 households assigned their rights to the insurers comprising the Subrogated Group (McConville Aff., Ex. H (Signed Assignments of Rights)) who then, in turn, released their claims against C.A.I. and agreed to indemnify C.A.I. pursuant to the terms of the settlement agreement.

F.3d at 24.  Ashland acknowledges that there are two separate indemnification agreements that govern the parties here:  (1) the indemnification agreement between the Trust beneficiaries and Subrogated Group and C.A.I. and (2) the indemnification agreement between C.A.I. and Ashland. (Ashland Opp. at 3).  Ashland brought C.A.I. into the instant action as a third-party defendant, claiming that C.A.I. is obligated to indemnify Ashland for any liability it incurs as a result of the sales of certain chemicals Ashland made to C.A.I.  See id.  Accordingly, Ashland asserts that if CAI is obligated to indemnify Ashland for any liability it may have to the putative class, the Trust beneficiaries and the Subrogated Group are then obligated to indemnify C.A.I. for that same liability.  See Ashland Opp. at 3.  Thus, for the Court to determine that the indemnification provision effectively eliminates all of the putative class members who are Trust beneficiaries or part of the Subrogated Group at this juncture would require the Court to resolve first, that the agreement between Ashland and C.A.I. obligates C.A.I. to indemnify Ashland.  See RFR Indus., Inc. v. Rex-Hide Indus., Inc., 222 Fed. Appx. 973, 977-78 (Fed. Cir. 2007) (affirming district court's summary judgment determination to the extent the district court found the released party was obligated to indemnify the non-released party against plaintiff's claims pursuant to the contract between the non-released party and released party and subsequently concluded the settlement agreement between plaintiff and released party obligated plaintiff to indemnify released party; reversing, vacating and remanding other aspects of the district court's summary judgment determination).   Because the matter of whether C.A.I. is obligated to indemnify Ashland has not yet been litigated and C.A.I. disputes that it is obligated to indemnify Ashland under these circumstances, Tr. 43:24-44:4, the Court cannot resolve whether the Indemnitors under the settlement agreement's indemnification provision are required to indemnify C.A.I. from liability to the extent that the Indemnitors should

be eliminated from the putative class.  The Court, therefore, finds it inappropriate to conclude that the Indemnitors must be excluded from the class at the class certification stage.

Accordingly, the Court finds that the Named Plaintiffs have satisfied the numerosity prerequisite for the class as it is defined.  However, as discussed more fully below, the indemnification issues affecting the class, even without deciding the merits, are critical to the typicality and adequacy inquiries.

### b.    Commonality

To meet the commonality requirement under Rule 23(a)(2), the Named Plaintiffs must show that "there are questions of law or fact common to the class," FED. R. CIV. P. 23(a)(2).  The claims of the class "must depend on a common contention . . . that is capable of classwide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart, 131 S.Ct. at 2551.  The commonality requirement is a "low bar." In re New Motor Vehicles, 522 F.3d at 19.  Even a single common legal or factual issue may be sufficient to satisfy commonality.  See, e.g., Payne v. Goodyear Tire & Rubber Co., 216 F.R.D. 21, 25 (D. Mass. 2003); In re Evergreen, 275 F.R.D. at 388.

In the instant case, plaintiff has identified a host of common questions including whether Ashland is strictly liable to the class for damages resulting from engaging in an ultra-hazardous or abnormally dangerous activity, whether Ashland breached the implied warranty of merchantability and whether the explosion was within the reasonably foreseeable risks of harm created by Ashland's conduct.  (Pl. Memo at 10-11).  The commonality requirement is therefore satisfied.  See, e.g., In re Evergreen, 275 F.R.D. at 388-89 (finding commonality requirement easily satisfied where the plaintiff had identified two common questions of law and fact); In re Boston Scientific, 604 F. Supp.

2d at 281 (finding commonality requirement met where plaintiff identified at least three common questions).

### c.      Typicality

The requirements of typicality and adequacy focus on the class representatives, FED. R. CIV. P. 23(a)(3) & 23(a)(4), and " tend to merge."   See, e.g., Wal-Mart, 131 S.Ct. at 2551 n. 5; In re Credit Suisse-AOL Sec. Litig., 253 F.R.D. 17, 22 (D. Mass. 2008).   Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3).   The class representatives' claims are "typical" when their claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory." García-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009) (quoting In re Am. Med. Sys., Inc., 75 F.3d 1069, 1082 (6th Cir. 1996) (further citation omitted)).   The purpose of the typicality inquiry is to "align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" In re Boston Scientific, 604 F. Supp. 2d at 282 (quoting In re Prudential Ins. Co. Am. Sales Litig., 148 F.3d 283, 311 (3d Cir. 1998)).

The parties do not necessarily dispute, that the claims of the proposed class are premised on the same event or alleged course of conduct - namely, Ashland's alleged misconduct in causing the explosion.   Generally, the theories of recovery against Ashland asserted by the Named Plaintiffs also may have caused the damages suffered by class members.   See Pl. Memo at 12-13; FAC at ¶ 17.   Despite these similarities, the Named Plaintiffs have not shown that their interests in proving liability are aligned with those of the class to meet the typicality requirement.

The typicality analysis is designed to ensure that class representatives, in pursuing their own interests, will concurrently advance those of the class.  As indicated previously, the indemnification provision requires the Subrogated Group and Trust beneficiaries to individually defend, hold harmless and indemnify C.A.I. for "any and all claims in the nature of third-party claims for indemnity or contribution which might be brought by Non-Released Parties against whom actions are brought by any individual Indemnitor to the extent that any such individual Indemnitor(s) initiated (or subsequently joined in) the litigation or claim against the Non-Released Party which, in turn, caused the contribution or indemnity claim to be brought against [C.A.I.]."  McConville Aff., Ex. D, § 5.

Since Ashland, a non-released party, has brought a third-party claim for indemnification and contribution against C.A.I., the released party in Borelli, the impact of this indemnification provision on class members who are Indemnitors (i.e., Trust beneficiaries and members of the Subrogated Group), even if, as discussed as to numerosity, is not yet resolved, is certainly a live issue in this case.  The Named Plaintiffs acknowledge that the indemnification provision cited above does not apply to the other class members who are neither Trust beneficiaries nor members of the Subrogated Group.   The Named Plaintiffs also recognize that the indemnification provision will affect the Indemnitors and non-Indemnitor class members differently - i.e., if the case is certified as a class action and the class prevails, the Indemnitors in the class will be obligated to indemnify C.A.I., (Tr. 9: 3-19), but the non-Indemnitors will not be so obligated.    Based upon the submissions by the parties regarding the composition of the class, it is apparent that a substantial majority of the putative class here are Indemnitors (i.e., Trust beneficiaries or members of the Subrogated Group) who would be bound by the indemnification provision.  See Lagorio Aff., Ex. B (chart listing

putative class members who had also claimed damages in <u>Borelli</u>); Ashland Opp., Ex. D (settlement agreement attaching Exs. A (list of Subrogated Group) and B (listing Trust Beneficiaries).

Despite the fact that a vast majority of the class are Indemnitors, none of the Named Plaintiffs–not Riva, Corrieri nor Sentry–are Indemnitors.  <u>See</u> Section III. A. <u>supra</u>; Tr. 8:6-12, 13: 4-7.  The Named Plaintiffs contend that Riva assigned her rights away to her insurance company that was a member of the Subrogated Group, but that she is not an Indemnitor under the indemnification provision since as the insured, she was not part of that Subrogated Group.  Neither Corrieri nor Sentry were Trust beneficiaries or received payments from any insurance company of the Subrogated Group who then signed the <u>Borelli</u> settlement agreement.

Riva, Corrieri and Sentry are all non-Indemnitors and therefore would not be bound by the indemnification provision.  As non-Indemnitors, the Named Plaintiffs have an interest in proving Ashland's liability and maximizing damages.  The majority of the class, the Indemnitors, on the other hand, do not have the same goal since according to the indemnification provision, if the Named Plaintiffs prevail in this case and C.A.I. is obligated to indemnify Ashland, the Indemnitors would be obligated to pay damages rather than recover them.   Because the Named Plaintiffs have not demonstrated that they have the same interests as the Indemnitors, comprising a vast majority of the proposed class, given the potential effect of the indemnification provision, it cannot be said that the interests of the class representatives are typical of the class in this respect.[4]

---

[4]The claims of the Named Plaintiffs may be atypical of the claims of the purported class in other respects as well.  As alleged in the first amended complaint, the purported class "suffered damages as a result of the same single event, i.e., the Explosion . . . on November 22, 2006" and seeks damages for that injury.  (FAC at ¶¶ 10, 14).  However, the relief sought by Riva is narrower than that defined for the class since, although she suffered damage to both real and personal property, she seeks only recovery for damage to her personal property that was not covered by insurance.  <u>See</u> Section III(A), <u>supra</u>.  Corrieri seeks relief for damage to his personal property, a boat, that was uninsured.  <u>Id.</u>  Sentry seeks recovery for insurance payments it made

Accordingly, the Court finds that the Named Representatives do not satisfy the typicality requirement of Rule 23(a)(3).

### d.   Adequacy

For similar reasons, the Court has serious concerns regarding whether the Named Plaintiffs can adequately represent the class as defined here.  The adequacy requirement "demands a similar inquiry [to that of typicality] into whether the putative representative plaintiff's interests are aligned with other class members and whether the plaintiff is in a position to vigorously protect the class' interests."  In re Credit Suisse-AOL, 253 F.R.D. at 23.  Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  To be adequate class representatives, plaintiffs  must show that:  (1) "the interests of the representative party will not conflict with the interests of the class members"; and (2) "counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation."  In re Boston Scientific, 604 F. Supp. 2d at 282 (quoting Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985)).[5]

_____

to the Merritts for damage to their property.  Id.  The Named Plaintiffs have not made clear that the limits of the Named Plaintiffs' claims are typical of the purported class.

[5]Ashland does not dispute the adequacy of proposed class counsel and the Court sees no basis under Rule 23(a)(4) to find that proposed class counsel are inadequate.  When considering whether to appoint counsel as class counsel, the court is to consider "the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions. . .; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class" and "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(A) & (B).  The Named Plaintiffs have shown that proposed class counsel, the Law Office of Peter A. Lagorio, has the skills and resources to adequately, professionally and vigorously represent the class.  See Lagorio Aff., Ex. C (summary firm resume of the Law Office of Peter A. Lagorio).  Lagorio's firm is qualified and experienced in class action litigation, see id., and worked alongside proposed class co-counsel, the Law Office of Michael F. Germano, in representing the class in Borelli.  (Pl. Memo at 13).

The "adequate-representation requirement is typically construed to foreclose the class action where there is a conflict of interest between the named plaintiff and the members of the putative class."  Gen. Tel. Co. of the Nw., Inc., v. EEOC, 446 U.S. 318, 331 (1980); Albertson's Inc. v. Amalgamated Sugar Co., 503 F.2d 459, 463 (10th Cir. 1974) (noting that "[i]t is axiomatic that a plaintiff cannot maintain a class action when his interests are antagonistic to, or in conflict with, the interests of the persons he would seek to represent") (citing cases); Lockwood Motors, Inc. v. Gen. Motors Corp., 162 F.R.D. 569, 576 (D. Minn. 1995) (noting that adequacy requires that "representative's interests are sufficiently similar to those of the class such that it is unlikely that their goals and viewpoints will diverge").

An apparent conflict of interest exists between the non-Indemnitors (i.e., the Named Plaintiffs) and the Indemnitors (i.e., substantial majority of the class).  If the Indemnitors remain part of the class, they may likely be obligated to indemnify C.A.I. should the class prevail.  That is, while the Named Plaintiffs would clearly benefit from a victory, the Indemnitors would be negatively affected.  This is not a mere difference in status as the Named Plaintiffs suggest; rather, this is an apparent conflict.  The Indemnitors' interest in shielding themselves from liability at this point in the litigation is simply contrary to the Named Plaintiffs' objectives in both proving liability and acquiring damages against Ashland.

The Named Plaintiffs make no attempt to mediate this fundamental conflict.  That the class representatives have suffered the same injury as the Indemnitors and non-Indemnitors in the class is insufficient to show that the adequacy requirement is met.  Class representatives must also "possess the same interests" as other class members.  Falcon, 457 U.S. at 156 (citation omitted). The Named Plaintiffs have not demonstrated that even though the indemnification provision does

not apply to them, they can fairly represent the Indemnitors' interests in this case, including litigating the indemnification issue.   In the instant motion, the Named Plaintiffs propose that the Indemnitors be part of the class they seek to certify.   The Named Plaintiffs cannot seek to include Indemnitors in the proposed class - disregarding the potential liability Indemnitors may face should the proposed class prevail - and at the same time, claim they can fairly represent the Indemnitors' interest in limiting their own liability.   As in all class certification questions, the burden of proving typicality and adequacy rests with the Plaintiffs.   See Smilow, 323 F.3d at 38.   Here, the Named Plaintiffs have failed to show that their interests are the same as those of the absent class members to stand in their shoes for the purposes of this litigation and bind them to a judgment on the merits.

Accordingly, the Named Plaintiffs have not satisfied their burden of proving that they are either typical of the class or that they will "fairly and adequately protect the interests of the class" to satisfy Rule 23(a)(3) and (a)(4).   See, e.g., Mechigian v. Art Capital Corp., 612 F. Supp. 1421, 1433-34 (S.D.N.Y. 1985) (finding that plaintiff's interests were in part antagonistic to the interest of the rest of the class where the class would be subject to tax liability); Metzger v. Am. Fidelity Assurance Co., 249 F.R.D. 375, 377 (W.D. Okla. 2007) (finding inadequate a named plaintiff whose "economic incentives [were] at apparent odds with the purported class" where the class members, unlike the plaintiff, would have to pay higher insurance premiums in the likely result that the class prevailed).

The Named Plaintiffs contend that the Court cannot consider in its analysis the indemnification provision because doing so addresses the merits of the case and suggest the issue in its entirety is better left for consideration upon Ashland's motion for summary judgment.  As the

First Circuit has counseled, the Court cannot "put blinders on as to an issue simply because it implicates the merits of the case." In re New Motor Vehicles, 522 F.3d at 17.  "It is a settled question that some inquiry into the merits at the class certification stage is not only permissible but appropriate to the extent that the merits overlap the Rule 23 criteria." Id. at 24 (citing Falcon, 457 U.S. at 160).  The Court appropriately has made some inquiry into the merits of the case, namely the implication of the indemnification provision in the settlement agreement, but does not, and need not, resolve the merits to conclude that the Named Plaintiffs' interests are not typical of the purported class and they are not adequate representatives of that class.

In a final effort to save the class, the Named Plaintiffs suggest in the last paragraph of their reply brief, that the Court certify two sub-classes, defined as:  (1) "all members of the Class who were defined as 'Indemnitors' (the Trust beneficiaries and the Subrogated Group) in the Borelli settlement)" and (2)"all members who received insurance payments for damages incurred in the Explosion and who signed subrogation agreements with the insurers that made those payments." Pl. Reply at 11.  The Named Plaintiffs propose creating a subclass of Indemnitors subject to the indemnification defense and the second sub-class to class members who may be subject to the subrogation defense.  The precise contours of the second sub-class are unclear, since this sub-class could also include Trust Beneficiaries who signed away their rights to insurance companies - i.e., Indemnitors.  Rule 23(c)(5) requires that each subclass must independently meet the requirements of Rule 23 to maintain a class action.  FED. R. CIV. P. 23(c)(5) ("[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule").  The Named Plaintiffs have made no attempt to establish that all the Rule 23(a) or Rule 23(b)(3) requirements have been satisfied to warrant certification of these purported sub-classes.  It is plaintiffs' burden to satisfy

each class certification requirement for proposed sub-classes and the Named Plaintiffs have failed to do so here.  See Green v. Johnson, 513 F. Supp. 965, 976 (D. Mass. 1981) (finding that dividing the class of inmates into subclasses was not appropriate where one subclass would probably not independently satisfy the Rule 23(a) requirements).

In light of the Court's finding that the Named Plaintiffs have failed to satisfy the requirements of typicality and adequacy set forth in Rule 23(a) and given the Named Plaintiffs' scant treatment of the Rule 23(b)(3) requirements in its motion papers, see Pl. Memo. at 13-14, the Court need not address the requirements of Rule 23(b)(3).  See Smilow, 323 F.3d at 38 (noting that "to obtain class certification, the plaintiff must establish the four elements of Rule 23(a) and one of several elements of Rule 23(b)"); see also Rand v. Bath Iron Works Corp., 2000 WL 761630, at *3 (D. Me. Apr. 19, 2000) (finding that because plaintiffs failed to satisfy commonality and typicality under Rule 23(a), the Court need not address the remaining requirements of numerosity or adequacy under Rule 23(a) or the requirements under Rule 23(b)(3)); Rodriguez-Feliciano v. P.R. Elec. Power Auth., 240 F.R.D. 36, 39 (D.P.R. Feb. 13, 2007) (refraining from addressing whether plaintiffs satisfied Rule 23(b) requirements, since plaintiffs failed to show commonality, typicality and adequacy under Rule 23(a)).

IV.     **Conclusion**

For the foregoing reasons, the Named Plaintiffs' motion for class certification is DENIED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge