## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **DEBORAH RIVA, ROBERT CORRIERI, and SENTRY INSURANCE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 09-cv-12074-DJC** |
| | ) | |
| **ASHLAND, INC. (d/b/a Ashland Chemical Company, d/b/a Ashland Specialty Chemical Company, d/b/a Ashland Distribution Company),** | ) | |
| | ) | |
| **Defendant/Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **C.A.I., Inc.,** | ) | |
| | ) | |
| **Third-Party Defendant.** | ) | |

| | | |
|---|---|---|
| **VIGILANT INSURANCE CO., et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 11-cv-12269-DJC** |
| | ) | |
| **ASHLAND, INC. (d/b/a Ashland Chemical Company, d/b/a Ashland Specialty Chemical Company, d/b/a Ashland Distribution Company),** | ) | |
| | ) | |
| **Defendant/Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **C.A.I., Inc.,** | ) | |
| | ) | |
| **Third-Party Defendant.** | ) | |



KAREN SAVINI, et al.,                    )
                                         )
        Plaintiffs,                      )
                                         )
        v.                               )        Civil Action No. 11-cv-12277-DJC
                                         )
ASHLAND, INC. (d/b/a Ashland Chemical    )
Company, d/b/a Ashland Specialty Chemical)
Company, d/b/a Ashland Distribution      )
Company),                                )
                                         )
        Defendant/Third-Party Plaintiff  )
                                         )
        v.                               )
                                         )
C.A.I., Inc.,                            )
                                         )
        Third-Party Defendant.           )
                                         )

## MEMORANDUM AND ORDER

**CASPER, J.**                                    March 26, 2013

## I.    Introduction

On November 22, 2006 there was an explosion at an ink and paint manufacturing facility in Danvers, Massachusetts ("Danvers facility") that was shared by Arnel Co., Inc. ("Arnel") and C.A.I. Inc. ("C.A.I."). Named plaintiffs and proposed class representatives, Deborah Riva ("Riva"), Robert Corrieri ("Corrieri") and Sentry Insurance ("Sentry"), brought a putative class action against Defendant Ashland, Inc. ("Ashland") seeking damages arising from the explosion and alleging that Ashland supplied, combined and maintained certain highly explosive chemicals at the Danvers facility in such a way that caused the explosion. After this Court's denial of class certification, two sets of plaintiffs brought two nearly identical actions also seeking damages arising from the explosion. The plaintiffs assert claims against Ashland for strict liability, negligence, public nuisance, breach of implied warranty of merchantability and violation of

Mass. Gen. L. c. 93A.  Ashland has brought third-party claims against C.A.I. in each action for indemnification and contribution for the plaintiffs' claims against Ashland in the three cases.  In Riva v. Ashland, Inc., No. 09-cv-12074-DJC ("Riva"), Ashland has moved for declaratory judgment as to C.A.I.'s obligation to indemnify Ashland, D. 82, and summary judgment against the plaintiffs, D. 84.  In Vigilant Ins. Co. v. Ashland, Inc., No. 11-cv-12269-DJC ("Vigilant"), the plaintiffs have moved to strike Ashland's third-party complaint against C.A.I., D. 14, and Ashland has moved for declaratory judgment as to C.A.I.'s obligation to indemnify Ashland, D. 32, and summary judgment against the plaintiffs, D. 29.  In Savini v. Ashland, Inc., No. 11-cv-12277-DJC ("Savini"), the plaintiffs have moved to strike Ashland's third-party complaint against C.A.I., D. 21, and for judgment on the pleadings as to its counterclaims against C.A.I., D. 33, C.A.I. has moved to dismiss the plaintiffs' counterclaims, D. 29, and Ashland has moved for declaratory judgment as to C.A.I.'s obligation to indemnify Ashland, D. 52, and summary judgment against the plaintiffs, D. 48.

## II.       Factual and Procedural Background

### A.       The Explosion at the Danvers Facility

Ashland is an international chemical manufacturer and supplier.  Riva, D. 73 ("Mem. & Order") at 2.  At the time of the explosion on November 22, 2006, Ashland was the primary provider of chemicals to C.A.I., a manufacturer of commercial printing inks, and Arnel, a manufacturer of paint products.  Id.  C.A.I. and Arnel both operated from the Danvers facility. Id.  On November 21, 2006, Ashland delivered 5,000 to 6,000 gallons of flammable chemicals including Heptane, Iso Propyl and n-Propyl Alcohol (the "Chemicals") to C.A.I. at the Danvers facility.  Id.  The sales terms and conditions (the "Terms and Conditions") of the sales contracts for the Chemicals (the "Sales Contracts") provide that "BUYER [C.A.I.] will comply with all

laws, rules and regulations pertaining to handling of the Product, and BUYER assumes all risks and liability arising out of its use, storage, handling and resale of the Product." Ex. A to First. Am. Compl., <u>Savini</u>, D. 4 ("Sales Contracts") at 3 ¶ 8. The Terms and Conditions also provide that "BUYER [C.A.I.] agrees to defend, indemnify and hold SELLER [Ashland] harmless against claims by any third party (including BUYER's employees and customers) arising out of BUYER's use, storage, handling or resale of the Product." <u>Id.</u> at 3 ¶ 9. Ashland and C.A.I. worked jointly at the facility to offload the Chemicals from Ashland's tanker truck to C.A.I.'s storage/process tanks. Mem. & Order at 2. During this process, C.A.I. and Ashland produced a highly explosive chemical mixture in a particular C.A.I. storage tank, known as "Mix Tank 3," that was not appropriate to receive, store or process such chemical mixture. <u>Id.</u> Within a matter of hours, the chemical mixture in Mix Tank 3 resulted in a solvent vapor cloud formation of Heptane, Iso Propyl and n-Propyl Alcohol within the facility. <u>Id.</u> This vapor cloud formation resulted in a vapor cloud explosion on November 22, 2006 that destroyed the Danvers facility and caused over $30 million in property damage to the surrounding Danversport community. <u>Id.</u> at 2–3.

### B.    <u>State Court Proceedings</u>

#### 1.    The <u>Borelli</u> Class Action and the Danversport Trust

On December 15, 2006, a class action complaint was filed against C.A.I. and Arnel in Essex Superior Court, <u>Borelli v. C.A.I., Inc.</u>, No. 06-2382 ("<u>Borelli</u>"). <u>Id.</u> at 3. As initially alleged, the putative class in that case was defined as "all persons and entities who sustained or allegedly sustained damages or injuries as a result of the explosion that occurred at Defendants' facility on November 22, 2006." <u>Id.</u> at 3–4. Ashland was not named as a defendant in <u>Borelli</u> or

in any of the additional suits brought against C.A.I., Arnel and its insurers by the subrogated insurers of the property owners who sustained damages as a result of the explosion. <u>Id.</u> at 4.

In connection with the <u>Borelli</u> action, on June 1, 2007, certain households and businesses in the Danversport area in close proximity to the site of the explosion created the Danversport Trust ("Trust") for the benefit of those "whose real estate Property . . . was directly impacted by the explosion and fire at the [Danvers facility] . . . or individuals who were otherwise on the Property directly impacted by the incident." <u>Id.</u> The purpose of the Trust was to serve as a vehicle for resolving "all actual or potential legal claims of Beneficiaries for personal injury, property damage, and[/]or consequential or residual damages that the Beneficiaries may have against" parties. <u>Id.</u>

### 2.   <u>Borelli</u> Settlement Agreement and Indemnification of C.A.I.

On October 22, 2008, the Essex Superior Court certified the <u>Borelli</u> class and approved a comprehensive settlement agreement ("Settlement Agreement") entered into by C.A.I., among other released parties, (a) the <u>Borelli</u> class; (b) the "Subrogated Group"; and (c) the Trust. <u>Id.</u> The Subrogated Group was comprised of sixty-one insurance companies that had paid in excess of $20 million to satisfy claims of certain insured class members in connection with the damages sustained as a result of the explosion. <u>Id.</u> Not all <u>Borelli</u> class members were Trust beneficiaries or part of the Subrogated Group. <u>Id.</u> at 4–5. Pursuant to the release in the Settlement Agreement, the <u>Borelli</u> class, the Trust beneficiaries and Subrogated Group agreed, among other things, to release all claims against C.A.I. arising out of the explosion. <u>Id.</u> at 5. The Settlement Agreement also contains an indemnification provision, which applies only to Trust beneficiaries and the Subrogated Group. <u>Id.</u> at 5. The indemnification provision states:

> Each individual member of the Subrogated Group and Trust [all trust beneficiaries and representatives] (collectively, the "Indemnitors") agrees to

defend, hold harmless and indemnify each of the Released Parties from any and all claims in the nature of third-party claims for indemnity or contribution which might be brought by Non-Released Parties against whom actions are brought by any individual Indemnitor to the extent that any such individual Indemnitor(s) initiated (or subsequently joined in) the litigation or claim against the Non-Released Party which, in turn, caused the contribution or indemnity claim to be brought against the Released Party.

Ex. B to First. Am. Compl., <u>Savini</u>, D. 5 ("Settlement Agreement") § 5.[1]  This indemnification provision does not require <u>Borelli</u> class members who were not Trust beneficiaries or in the Subrogated Group to indemnify C.A.I.  Mem. & Order at 5.  The Settlement Agreement also provides that the <u>Borelli</u> "[c]lass Members expressly reserve the right to initiate individual, class, or collective actions against any or all such Non-Released Parties."  Settlement Agreement § 4.  The Settlement Agreement defines "Class Members" to mean "all persons and entities who sustained or allegedly sustained damages or injuries as a result of the Explosion at the Site," but excludes the Subrogated Group, Released Parties and federal and state agencies.  <u>Id.</u> §§ 2(h), (j).  "Non-Released Parties" is defined as "all persons, entities or other parties other than the Released Parties, and expressly includes all third-party vendors and suppliers to Arnel and/or C.A.I."  <u>Id.</u> § 2(e).

<u>Borelli</u> class counsel explained the terms of the Settlement Agreement in the class notice sent to all potential <u>Borelli</u> class members.  Mem & Order at 6.  The paragraph entitled, "10. WHAT AM I GIVING UP OR RELEASING?" states:

---

[1] The Settlement Agreement defines "claims" as "any past, present or future obligations, claims, demands, suits, letters, requests for information . . . complaints, counterclaims, cross-claims . . . requests, letters, notices . . . and any other assertions of costs or liability of any kind, . . . whether legal or equitable, and whether currently known or unknown, . . . foreseen or unforeseen, and whether sounding in tort, toxic tort, contract, equity, nuisance . . . negligence, strict liability or any other . . . common law cause of action, duty or obligation of any sort, that (i) arise from or are related in any way to the Explosion, and (ii) have been, could have been and/or could or may be asserted against any member of the Released Parties."  Settlement Agreement § 2(k).

> The settlement provides that you may not sue, or be part of any other lawsuit against [C.A.I.] or against their past, present and future parent companies, subsidiaries, employees, owners . . . assigns, entities in which any of the above have a controlling interest, and their insurers, for any claims arising out of or relating to the Explosion.  The settlement does not result in the release of any potential claims against unaffiliated third parties such as Defendants' vendors and suppliers.

Id.  The Settlement Agreement further provided that the defendants' insurers in Borelli pay $7,000,000 into an interest bearing escrow account.  Id.  Of that total, $1,475,000 was to be distributed to the Borelli Class Members and the Trust, and the remaining $5,525,000 was to be paid to the Subrogated Group.  Id.

A Claims Review Committee was then established to determine, on a case-by-case basis, which members of the Borelli class would share in the settlement funds and to calculate the pro rata dollar amount that each claimant would receive.  Id. at 6.  The Claims Review Committee reviewed approximately 250 claim forms submitted by Borelli Class Members, which described their claims for property damages, business revenue loss, relocation costs, personal injury and/or emotional distress resulting from the explosion.  Id.  Borelli Class Members received compensation resolving their claims in that matter.  Id.

## C.   Riva Class Action

### 1.   The Riva Allegations

On November 16, 2009, plaintiffs Riva and Corrieri filed a putative class action against Ashland in Essex Superior Court seeking to recover monetary damages from Ashland to compensate them, and all others similarly situated, for losses caused by the explosion and asserting claims for strict liability, negligence, public nuisance and breach of warranty of merchantability.  Id. at 7.  The matter was subsequently removed to this Court.  Id.  Ashland filed a third-party complaint against C.A.I. on April 14, 2010, asserting claims for, among other

things, contractual indemnity and declaratory judgment.  Id.  In its answer, C.A.I. submitted a claim against Riva and Corrieri for contractual indemnification.  Id.  The Court (Wolf, C.J.) denied Riva and Corrieri's subsequent motion to dismiss C.A.I.'s claim against them.  Riva, D. 37.  Riva and Corrieri then amended the complaint to add the third named plaintiff Sentry.  First Am. Class Action Compl., Riva, D. 38 ("Riva Compl.").

Riva alleges that her residence and personal property in Danvers were destroyed by the explosion.  Id. ¶ 3.  Although Riva was not a Trust beneficiary, she was a member of the Borelli class and received $2,100 from the Claims Review Committee to resolve her claims in that matter.  Mem. & Order at 7.  Riva assigned her rights to MiddleOak Insurance Company, a company that was included in the Subrogated Group and was a party to the Settlement Agreement.  Id. at 7–8.  In the instant action, Riva asserts no claims for personal injuries or negligent infliction of emotional distress or for damages to her residence or vehicle.  Id. at 8.  Instead, her claims are for damages to personal property caused by the explosion that was not covered by her insurance carrier.  Id.

Corrieri alleges that his uninsured boat was damaged in the explosion while it was stored at Liberty Marina in Danvers.  Riva Compl. ¶ 4.  Corrieri received $5,000 as a settlement payment in the Borelli class action for damage to the same boat for which he now asserts claims against Ashland in the instant action.  Mem. & Order at 8.

Sentry is an insurance company and alleges that it sustained losses due to its insurance settlement payments to its insureds, George and Joyce Merritt (the "Merritts"), for damage to their property in Danvers as a result of the explosion.  Riva Compl. ¶ 5; Mem. & Order at 8.  Sentry is neither a Trust beneficiary nor a member of the Subrogated Group.  Mem. & Order at

9.  However, Sentry was a <u>Borelli</u> class member and received approximately $41,000 pursuant to the Settlement Agreement.  <u>Id.</u>

Riva, Corrieri and Sentry (collectively, the "<u>Riva</u> Plaintiffs") allege that Ashland knew about the nature of C.A.I. and Arnel's business, their qualifications, their products, the Danvers facility and the highly explosive nature of the chemicals and chemical mixtures that Ashland continuously provided and maintained at the Danvers facility as well as the foreseeable risks of vapor cloud explosions and the destruction to the surrounding Danversport neighborhood.  <u>Riva</u> Compl. ¶ 17.  The <u>Riva</u> Plaintiffs further claim that Ashland, among other things:  did not inquire or determine whether C.A.I. or Arnel had a license or permit to purchase, store, combine, use or maintain the quantities and types of chemicals Ashland provided; did not inquire or determine whether C.A.I. or Arnel had an OSHA-mandated Process Safety Management Program or any other process safety program or controls for the safe handling and storing of the chemicals; failed to comply with certain safety regulations; failed to disclose the scope and magnitude of the explosivity risks and hazards of the chemicals and chemical mixtures that it was providing; delivered chemicals into improper, non-conforming and unlawful containers and vessels; delivered chemicals into an unsafe environment with foreseeable risks of a devastating explosion; and participated in the manufacture of an explosive chemical mixture in a C.A.I. storage/process tank that was not appropriate to receive, store or process such chemical mixture and that resulted in the vapor cloud explosion.  <u>Id.</u> ¶ 28.  On November 21, 2006, the <u>Riva</u> Plaintiffs allege that Ashland, as part of the aforementioned routine and practices, "worked jointly with C.A.I. personnel" to offload the Chemicals to C.A.I.'s storage/process tanks and to produce a highly explosive chemical combination in Mix Tank 3 that resulted in a "vapor cloud formation" and the subsequent explosion that caused damage to the surrounding Danversport

community.  Id. ¶¶ 29–30.  The Riva Plaintiffs assert claims for strict liability (Count I),

negligence (Count II), public nuisance (Count III), breach of warranty of merchantability (Count

IV) and violation of Mass. Gen. L. c. 93A (Count V) against Ashland.  Id. ¶¶ 33–55.

2.      *Class Certification*

The parties conducted discovery concerning class certification and on May 31, 2011, the

Riva Plaintiffs moved to certify the class.  Riva, D. 54.  This Court denied the Riva named

plaintiffs' motion for class certification on December 13, 2011, finding that the purported class

did not satisfy the typicality and adequacy requirements of Fed. R. Civ. P. 23(a).  See Mem. &

Order at 16–23.  The Riva named plaintiffs failed to show that their interests in proving liability

were aligned with those of the proposed class to meet the typicality requirement because the

Riva named plaintiffs are all non-Indemnitors whereas the majority of the proposed class

members are Indemnitors and therefore bound by the indemnification provision in the Settlement

Agreement.  Id. at 18.  This Court did not resolve the issue of whether C.A.I. was obligated to

indemnify Ashland for the Riva named plaintiffs' claims against Ashland, but recognized that if

it were and the case were certified as a class and the class prevailed, the Riva named plaintiffs

would not be obligated to indemnify C.A.I., but the Indemnitors in the class would be.  Id. at 17.

For similar reasons, this Court held that the Riva named plaintiffs could not adequately represent

the class because a conflict of interest exists between the non-Indemnitors (i.e., the Riva named

plaintiffs) and the Indemnitors (i.e., the substantial majority of the proposed class).  Id. at 19–20.

That is, due to the indemnification provision in the Settlement Agreement, while the Riva named

plaintiffs would benefit from a victory, the Indemnitors would be negatively affected because

they may have to indemnify C.A.I., the third party brought in by Ashland for its own

contribution and indemnification, as a result.  Id. at 20.

### 3.     The Pending Motions

Ashland has now filed a motion for declaratory judgment as to C.A.I.'s obligation to indemnify Ashland in accordance with the Terms and Conditions of the Sales Contracts that C.A.I. entered into with Ashland for the Chemicals that Ashland delivered to C.A.I on November 21, 2006.  Riva, D. 82 ("Riva Mot. for Decl. J.").  Ashland simultaneously filed a motion for summary judgment on all of the Riva Plaintiffs' claims.  Riva, D. 84 ("Riva Mot. for Summ. J.").

### D.     **Vigilant**

### 1.     The *Vigilant* Allegations

On December 19, 2011, six days after this Court denied class certification, forty-five plaintiffs (the "Vigilant Plaintiffs") including, but not limited to, insurance companies as subrogees, filed a complaint against Ashland for damages allegedly arising from the explosion on November 22, 2006.  Vigilant, D. 1.  On February 27, 2012, the Vigilant Plaintiffs filed an amended complaint against Ashland.  Vigilant, D. 4 ("Vigilant Compl.").  The Vigilant Plaintiffs make the same allegations as the Riva Plaintiffs and assert claims for strict liability (Count I), negligence (Count II), public nuisance (Count III), breach of warranty of merchantability (Count IV) and violation of Mass. Gen. L. c. 93A (Count V) against Ashland.  Id. ¶¶ 30–52.  The Vigilant Complaint specifies that the Vigilant Plaintiffs do not seek recovery from C.A.I. or for any claims "arising out of" C.A.I.'s "use, storage, handling or resale of the Product," but rather seeks recovery from Ashland solely to the extent of Ashland's own conduct.  Id. ¶ 1.  On April 6, 2012, Ashland filed a third-party complaint against C.A.I. asserting claims for contractual indemnity (Count I), common law indemnity (Count II), contribution (Count III) and declaratory judgment (Count IV).  Vigilant, D. 11 ("Vigilant Third-Party Compl.") ¶¶ 16–33.

### 2.     The Pending Motions

The <u>Vigilant</u> Plaintiffs have now filed a motion to strike Ashland's third-party complaint against C.A.I.   <u>Vigilant</u>, D. 14 ("<u>Vigilant</u> Pls.' Mot. to Strike").   Ashland has moved for declaratory judgment as to C.A.I.'s obligation to indemnify Ashland for the <u>Vigilant</u> Plaintiffs' claims, <u>Vigilant</u>, D. 32 ("<u>Vigilant</u> Mot. for Decl. J."), and a motion for summary judgment, <u>Vigilant</u>, D. 29 ("<u>Vigilant</u> Mot. for Summ. J.").

**E.      <u>Savini</u>**

*1.      The <u>Savini</u> Allegations*

The same day that the <u>Vigilant</u> action was filed, 293 plaintiffs (the "<u>Savini</u> Plaintiffs") filed a complaint against Ashland for damages allegedly rising from the explosion.   Compl., <u>Savini</u>, D. 1 ¶ 1.   On January 11, 2012, the <u>Savini</u> Plaintiffs filed an amended complaint against Ashland.   <u>Savini</u>, D. 3 ("<u>Savini</u> Compl.").   Each of the <u>Savini</u> Plaintiffs was a Trust beneficiary in the <u>Borelli</u> Settlement Agreement.   <u>Id.</u> ¶ 5.   The <u>Savini</u> Plaintiffs make the same allegations as the <u>Riva</u> and <u>Vigilant</u> Plaintiffs and also assert claims for strict liability (Count I), negligence (Count II), public nuisance (Count III), breach of warranty of merchantability (Count IV) and violation of Mass. Gen. L. c. 93A (Count V) against Ashland.   <u>Id.</u> ¶¶ 30–52.   As in <u>Vigilant</u>, the <u>Savini</u> complaint specifies that the <u>Savini</u> Plaintiffs do not seek recovery from C.A.I. or for any claims "arising out of" C.A.I.'s "use, storage, handling or resale of the Product," but rather seeks recovery from Ashland solely to the extent of Ashland's own conduct.   <u>Id.</u> ¶ 1.

On March 23, 2012, Ashland filed a third-party complaint against C.A.I. asserting claims for contractual indemnity (Count I), common law indemnity (Count II), contribution (Count III) and declaratory judgment (Count IV).   <u>Savini</u>, D. 17 ("<u>Savini</u> Third-Party Compl.") ¶¶ 16–33. On April 13, 2012, C.A.I. filed an answer to Ashland's third-party complaint and asserted a claim for contractual indemnity against the <u>Savini</u> Plaintiffs in accordance with the terms of the

Settlement Agreement.  <u>Savini</u>, D. 24 ("C.A.I.'s Answer").  On April 16, 2012, an attorney for the <u>Savini</u> Plaintiffs wrote a letter to counsel for C.A.I. stating that C.A.I. filed its answer to Ashland's third-party complaint without giving the <u>Savini</u> Plaintiffs any notice and that C.A.I. has a duty to allow the <u>Savini</u> Plaintiffs to defend C.A.I. against Ashland's claims.  Ex. A to <u>Savini</u> Pls.' Answer and Countercl., D. 25-1 ("April 16, 2012 Letter") at 2–3.  The <u>Savini</u> Plaintiffs' counsel also demanded that C.A.I. withdraw or strike its answer, withdraw or dismiss its claim against the <u>Savini</u> Plaintiffs and "cease any further action in defense of Ashland's third party complaint as that is solely the responsibility and under the control of [the <u>Savini</u>] Plaintiffs."  <u>Id.</u> at 3.  Furthermore, <u>Savini</u> Plaintiffs' counsel threatened that:

> [i]f [C.A.I.] does not comply with their duties as an Indemnitee and allow [the <u>Savini</u>] Plaintiffs to defend against Ashland's third party complaint, [the <u>Savini</u>] Plaintiffs will consider that [C.A.I.] has elected to defend itself and relieve [the <u>Savini</u>] Plaintiffs from any defense/indemnification obligation on the part of [the <u>Savini</u>] Plaintiffs regarding Ashland's contribution/indemnification claims against [C.A.I.] arising out of [the <u>Savini</u>] Plaintiffs' action against Ashland.

<u>Id.</u> at 4.  On April 17, 2012, he further delivered to C.A.I.'s counsel the answer the <u>Savini</u> Plaintiffs intended to file on C.A.I.'s behalf.  Ex. B to <u>Savini</u> Pls.' Answer and Countercl., D. 25-2 ("April 17, 2012 Email").  C.A.I. responded that same day and stated it would not withdraw its answer and counterclaim.  Ex. C to <u>Savini</u> Pls.' Answer and Countercl., D. 25-3 ("C.A.I.'s April 17, 2012 Letter") at 2.

On April 20, 2012, the <u>Savini</u> Plaintiffs filed an answer to C.A.I.'s contractual indemnification claim and asserted counterclaims for declaratory judgment (Count I), breach of the Settlement Agreement (Count II) and violation of Mass. Gen. L. c. 93A (Count III).  <u>Savini</u>, D. 25 ("<u>Savini</u> Pls.' Countercl.") ¶¶ 51–58.

> *2.      The Pending Motions*

The <u>Savini</u> Plaintiffs have now moved to strike Ashland's third-party complaint against C.A.I. <u>Savini</u> Pls.' Mot. to Strike Def.'s Third-Party Compl., <u>Savini</u>, D. 21 ("<u>Savini</u> Pls.' Mot. to Strike").  C.A.I. has filed a motion to dismiss the <u>Savini</u> Plaintiffs' counterclaims.  C.A.I.'s Mot. to Dismiss, <u>Savini</u>, D. 29 ("C.A.I.'s Mot. to Dismiss").   In response to C.A.I.'s motion to dismiss, the <u>Savini</u> Plaintiffs filed a cross-motion for judgment on the pleadings as to its counterclaims against C.A.I.  <u>Savini</u>, D. 33 ("Pls.' Mot. for J. on the Pleadings").  On September 5, 2012, Ashland filed a motion for declaratory judgment as to C.A.I.'s obligation to indemnify Ashland for the <u>Savini</u> Plaintiffs' claims, <u>Savini</u>, D. 52 ("<u>Savini</u> Mot. for Decl. J."), and a motion for summary judgment, Ashland's Mot. for Summ. J., <u>Savini</u>, D. 48 ("<u>Savini</u> Mot. for Summ. J.").

## III. Discussion

### A. <u>Declaratory Judgment as to C.A.I.'s Obligation to Indemnify Ashland</u>

In all three actions, Ashland has filed motions for declaratory judgment to determine C.A.I.'s indemnification obligation to it under the Terms and Conditions in the Sales Contracts for the sale of the Chemicals delivered by Ashland to C.A.I.'s facility on November 21, 2006. See <u>Riva</u> Mot. for Decl. J.; <u>Vigilant</u> Mot. for Decl. J.; <u>Savini</u> Mot. for Decl. J.  The Court will address the motions together because the issues raised by the motions and the arguments advanced in response to all the motions are the same.

#### 1. *Standard for Declaratory Judgment*

An action for declaratory judgment "enable[s] litigants to clarify legal rights and obligations before acting upon them."  <u>Ernst & Young v. Depositors Econ. Prot. Corp.</u>, 45 F.3d 530, 534 (1st Cir. 1995).  The Declaratory Judgment Act provides that, "[i]n a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations

of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Judgment is appropriate where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)) (internal quotation mark omitted). An action for declaratory judgment must present an actual case or controversy that is "ripe for judicial resolution." Verizon New England, Inc. v. Int'l Bhd. of Elec. Workers, 651 F.3d 176, 188 (1st Cir. 2011) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1995)) (internal quotation marks omitted). "Ripeness is an Article III jurisdictional requirement," id., and "[t]he party seeking a declaratory judgment bears the burden of establishing that the district court has jurisdiction." Tocci Bldg. Corp. of N.J., Inc. v. Va. Sur. Co., 750 F. Supp. 2d 316, 320 (D. Mass. 2010) (citing Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 95 (1993)).

For a claim to be ripe in the declaratory judgment context, the plaintiff must satisfy a two-prong test: fitness for review and hardship. Ernst & Young, 45 F.3d at 535. First, the court must determine whether the issue presented is fit for judicial review and "the critical question . . . is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." Id. at 536 (quoting Mass. Ass'n of Afro-Am. Police, Inc. v. Bos. Police Dep't, 973 F.2d 18, 20 (1st Cir. 1992)) (internal quotation marks omitted). As in a declaratory judgment action to establish whether an insurer is liable on a policy issued to an insured for claims asserted against the insured by third parties, Ashland seeks a declaration as to C.A.I.'s indemnification obligations to Ashland under the terms of the Sales Contracts for the claims asserted by the Riva, Vigilant and Savini Plaintiffs. See Tocci, 750 F. Supp. 2d at 321

(explaining that "whether an insurer is liable on a policy issued to an insured for injuries sustained by a third party is one common to typical disputes over insurance coverage and ripe for adjudication in declaratory judgment actions in federal court" (quoting Twin City Fire Ins. Co. v. Innovative Aftermarket Sys., L.P., 597 F. Supp. 2d 295, 300 (D. Conn. 2009)) (internal quotation marks omitted)).  Because Ashland seeks an interpretation of the Terms and Conditions of the Sales Contracts, Ashland's action for declaratory judgment is fit for adjudication.  See id. at 324 (holding that "[b]ecause the interpretation of insurance policy terms and coverage is a matter of law appropriate for judicial resolution," the plaintiff's action for declaratory relief against its insurer was "ripe for adjudication").

Second, the Court considers "the extent to which withholding judgment will impose hardship — an inquiry that typically 'turns upon whether the challenged action creates a direct and immediate dilemma for the parties.'"  Stern v. U.S. Dist. Court, 214 F.3d 4, 10 (1st Cir. 2000) (quoting W.R. Grace & Co. v. EPA, 959 F.2d 360, 364 (1st Cir. 1992)) (internal quotation marks omitted).  In determining hardship, the First Circuit has explained that the key question is "whether granting relief would serve a useful purpose, or, put another way, whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest." Verizon, 651 F.3d at 188 (quoting Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 693 (1st Cir. 1994)) (internal quotation mark omitted).  The parties agree that construing the scope of the Terms and Conditions in the Sales Contracts would be of practical assistance to them as this case moves forward because it would clarify the legal relations between the parties.  As the claims in all three actions depend upon the construction of the Terms and Conditions of the Sales Contracts, see, e.g., Vigilant Compl. ¶ 2 (requesting a "threshold determination by the Court that Ashland is not entitled to recover from C.A.I. under the purported indemnity or contribution at

issue for the claims being asserted by the Plaintiffs in this action and therefore there is no basis

for a third party claim by Ashland against C.A.I. for indemnity or contribution"), the plaintiffs in

Vigilant and Savini have moved to strike Ashland's third-party complaint against C.A.I. on the

theory that there is no circumstance in which C.A.I. could be liable to Ashland, and Ashland's

motion for summary judgment in Riva and Savini is based in part on the argument that Sentry's

and the Savini Plaintiffs' claims are barred by the doctrine of circular indemnity as a result of the

Borrelli Settlement Agreement.  Accordingly, this action also satisfies the hardship prong.

       2.     *The Indemnification Provision is Triggered by C.A.I.'s Sole, Joint and Concurrent Conduct and Covers Ashland's Negligence*

Ashland has filed motions for declaratory judgment to determine whether C.A.I. is

required to indemnify it for the Riva, Vigilant and Savini Plaintiffs' claims pursuant to the Sales

Contracts.   In essence, Ashland asks this Court to declare, as a matter of law, that the

indemnification provision of the Sales Contracts covers Ashland's negligence and obligates

C.A.I. to indemnify Ashland for the plaintiffs' claims.  Consequently, the Court will treat these

motions as motions for summary judgment on Ashland's third-party claims for declaratory relief.

See Jenkins Starr, LLC v. Cont'l Ins. Co., Inc., 601 F. Supp. 2d 344, 346 (D. Mass. 2009); Int'l

Bhd. of Teamsters v. E. Conference of Teamsters, 160 F.R.D. 452, 456 (S.D.N.Y. 1995)

(explaining that "[b]ecause an action for a declaratory judgment is an ordinary civil action, a

party may not make a motion for declaratory relief, but rather, the party must bring an action for

a declaratory judgment" and construing the plaintiff's motion for a declaratory judgment as a

"motion for summary judgment on an action for a declaratory judgment" (emphasis in original)).

Therefore, the burden is upon Ashland to show that there is no genuine dispute as to any material

fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

The parties do not dispute that Ohio law governs the interpretation of the Terms and Conditions of the Sales Contracts.[2]  See, e.g., Vigilant, D. 33 ("Vigilant Decl. J. Mem.") at 6; Vigilant, D. 37 ("Vigilant Decl. J. Opp.") at 3; Sales Contracts at 3 ¶ 15 (specifying that the contract "shall be governed by and construed under the laws of the State of Ohio"). Indemnification agreements are generally enforced in Ohio.  Papatheodorou v. Clark, 781 F. Supp. 2d 582, 586 (N.D. Ohio 2011); see also Glaspell v. Ohio Edison Co., 505 N.E.2d 264, 266 (Ohio 1987).  Under Ohio law, interpretation of the written provisions of a contract is a "matter of law for initial determination by the Court," Potti v. Duramed Pharms., Inc., 938 F.2d 641, 647 (6th Cir. 1991), and courts "interpret indemnity agreements the same way they interpret contracts."  Papatheodorou, 781 F. Supp. 2d at 586.  A court must interpret a contract so as to enforce the clear intent of the parties.  Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth., 678 N.E.2d 519, 526 (Ohio 1997).  "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement."  Id. (quoting Kelly v. Med. Life Ins. Co. 509 N.E.2d 411, 413 (Ohio 1987)); see also Worth v. Aetna Cas. & Sur. Co., 513 N.E.2d 253, 256 (Ohio 1987) (noting that the "nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used"). "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument."  In re All Kelley & Ferraro Asbestos Cases, 821 N.E.2d 159, 167 (Ohio 2004) (quoting Alexander v. Buckeye Pipe Line Co., 374 N.E.2d 146, 150 (Ohio 1978)) (internal quotation marks omitted).   If the terms of the contract are clear and unambiguous, "a court need not go beyond the plain language of the agreement to determine the

---

[2] The parties agree that Massachusetts law governs the formation of the contract.  See, e.g., Vigilant Decl. J. Mem. at 6; Vigilant Decl. J. Opp. at 4.

rights and obligations of the parties." Id. at 168. The court must construe the contract so as to give effect to every provision in the agreement. Id.

The Sales Contracts contain an indemnification provision whereby "[C.A.I.] agrees to defend, indemnify and hold [Ashland] harmless against claims by any third party (including [C.A.I.'s] employees and customers) arising out of [C.A.I.'s] use, storage, handling or resale of the [Chemicals]." Id. at 3 ¶ 9.[3] The plain language of the indemnification provision covers C.A.I's own conduct, a reading that the parties do not dispute. See, e.g., Vigilant Decl. J. Mem. at 17; Vigilant Decl. J. Opp. at 3.

The Court concludes that the indemnification provision also applies to claims that are causally related to C.A.I.'s use, storage, handling or resale of the Chemicals even if C.A.I.'s behavior is not the proximate cause of the alleged injuries or if C.A.I.'s behavior is done jointly with or concurrently with the conduct of another entity, such as Ashland. First, Ohio courts have read the phrase "arising out of" expansively to "afford[] very broad coverage." Stickovich v. Cleveland, 757 N.E.2d 50, 69 (Ohio Ct. App. 2001). It is generally understood to mean "flowing from," "having its origin in," "originating from," or "growing out of." Id. Furthermore, "[t]he term 'arising out of' does not require that the conduct be the proximate cause of the injury, only that it be causally related." Id. Second, the provision is devoid of language restricting coverage to claims arising from C.A.I.'s actions alone or in isolation. For example, the provision does not say that indemnification is provided for claims arising out of C.A.I.'s "sole" or "exclusive" use, storage, handling or resale of the Chemicals. See Key v. Key, No. CA99-08-020, 2000 WL

---

[3] Ashland relies in part upon paragraph 8 to establish C.A.I.'s duty to indemnify. See Vigilant Decl. J. Mem. at 13–14; Ashland's Mem. in Supp. of Mot. for Decl. J., Savini, D. 53 at 14–15. Paragraph 8 provides that "[C.A.I.] assumes all risks and liability arising out of its use, storage, handing and resale of the [Chemicals]." Sales Contracts at 3 ¶ 8. However, the indemnification provision is contained in paragraph 9. As discussed below, paragraph 8 governs claims as between the two contracting parties as opposed to claims by third parties.

959496, at *2 (Ohio Ct. App. July 3, 2000) (noting that courts "must give effect to the contract's expressed terms, which are to be given their plain, ordinary, and common meaning" and "court[s] cannot read additional language or terms into the contract").

<u>Chiquita Fresh v. Green Transport</u>, No. C-11-06683DMR, 2012 WL 1669395 (N.D. Cal. May 11, 2012), is instructive.  In <u>Chiquita</u>, GTC and Chiquita entered into a carrier agreement to govern the transportation services that GTC provides for Chiquita.  2012 WL 1669395, at *1.  GTC hired a trailer truck to transport Chiquita pineapples that overturned on a highway, killing two individuals.  <u>Id.</u>  The decedents' representatives filed two wrongful death suits against several parties including Chiquita.  <u>Id.</u>  The only allegations asserted against Chiquita were that it overloaded the trailer and did so in such a way that the load was likely to shift, which would cause or contribute to an accident during transportation.  <u>Id.</u>  Chiquita filed a third-party action against GTC for indemnification pursuant to the carrier agreement's defense, indemnity and insurance provisions.  <u>Id.</u>  The court applied Ohio law to construe the indemnification clause that provided that:

> [GTC] shall indemnify, defend and hold Chiquita . . . harmless from and against all damages, losses, costs, claims, injunctive relief, fines, penalties, settlements, charges and expenses (including attorneys' fees, expenses, disbursements and court costs), and all other expenses <u>relating to or arising from all claims</u> of every nature or character (<u>including</u>, without limitation, claims for personal injury, <u>death</u> and damage to property) . . . <u>arising out of or in connection with the loading, handling, transportation, unloading or delivery of any shipment under this Agreement by [GTC] or any substitute service provider</u> providing transportation services to Chiquita pursuant to this Agreement.

<u>Id.</u> at *5 (alteration and emphasis in original).  GTC argued that the provision did not apply because Chiquita was being sued for Chiquita's own negligence in loading the trailer, rather than the negligence of GTC or the substitute service provider.  <u>Id.</u>  The court rejected this argument because it "ignores language suggesting that GTC's duty is triggered by the nature of the <u>event</u>

— that is, whether a claim 'arise[s] out of or in connection with' transportation or delivery of any shipment by GTC or any substitute service provider." Id. (emphasis in original). The court held that since the accident "arose out of or in connection with" GTC's substitute service provider's transportation of a Chiquita shipment, the provision encompasses the wrongful death claims "even though the suit alleges that Chiquita's negligence, among others', caused the [a]ccident." Id. Thus, Chiquita reflects the proposition that the indemnification provision is triggered by the "arising out of" event described in the provision, not the allegedly negligent conduct on the part of the indemnitee, even if this conduct also caused or contributed to the injury.

Whether the provision also covers Ashland's negligence requires analysis of whether an indemnitee may be indemnified for its own negligence. "Ohio law does not require that contracts purporting to hold an indemnitee harmless for its own negligence contain express language to that effect." Coulter v. Dayton Power & Light Co., 731 N.E.2d 1172, 1174 (Ohio Ct. App. 1999). However, the general rule in Ohio is that where an agreement purports to protect an indemnitee from the consequences of his own negligence, the court must construe the words of the agreement "most narrowly." Glaspell, 505 N.E.2d at 266. In Glaspell, the Ohio Supreme Court explained that this general rule to "strictly construe this particular category of indemnity agreement" was developed to guard against such burden shifting in contracts of adhesion. Id. Therefore, "while clauses limiting the liability of the drafter are ordinarily to be strictly construed, [the court] need not do so when such burden of indemnification was assented to in a context of free and understanding negotiation." Id. The Glaspell court, "[h]aving determined the inadvisability of narrowly construing the agreement before [it]," also "pointed out that even a strict construction would require that all the words used be taken in their ordinary and popular sense." Id. at 267; accord Delco Prods. Div. Gen. Motors Corp. v. Dayton Forging

& Heat Treating Co., No. 6017, 1979 WL 155686, at *3 (Ohio Ct. App. Feb. 2, 1979) (noting that even the "requirement of strict construction requires only that the language used be plain, unequivocal and definite").

Here, both C.A.I. and Ashland are for-profit, commercial enterprises, and thus are presumptively sophisticated business entities under Ohio law.  See Preferred Capital, Inc. v. Power Eng'g Grp., Inc., 860 N.E.2d 741, 745 (Ohio 2007) (rejecting the defendants' argument that "mom and pop" small businesses should not be considered "sophisticated commercial entities" presumed to have some experience in contractual and business matters); Info. Leasing Corp. v. Jaskot, 784 N.E.2d 1192, 1196 (Ohio App. Ct. 2003) (explaining that for purposes of enforcing a forum-selection clause, it was "immaterial" that the defendant was a "sole proprietor" because "[u]nlike a consumer who enters into a contract with a commercial entity, [the sole proprietor] is presumed to have some experience in contractual and business matters"); The Toledo Grp., Inc. v. Benton Indus., Inc., 623 N.E.2d 205, 212 (Ohio App. Ct. 1993) (noting that the parties to the agreement at issue "were sophisticated in business matters" and "entered into a business contract, which must be construed in a business sense, as would be understood by persons of intelligent affairs").  Furthermore, there is no evidence that this is a situation in which the "stronger party[ ] attempt[ed] to impose wholly inequitable burdens upon the weaker party."[4] Coulter, 731 N.E.2d at 1175.  Thus, the Court need not strictly construe the words of the provision that purport to protect Ashland against its own negligence and the indemnification provision need not contain express language to that effect.

---

[4] In fact, C.A.I. agrees that it is bound by the indemnification provision as it relates to the Riva, Savini and Vigilant Plaintiffs' claims.  See C.A.I. Resp., Vigilant, D. 36; C.A.I. Resp., Savini, D. 55; C.A.I. Resp., Riva, D. 113.

In any event, the provision here is sufficiently inclusive to include Ashland's negligence, even applying such strict construction, if the plaintiffs' claims arise out of C.A.I.'s use, storage, handling or resale of the Chemicals.  In <u>Delco</u>, the court considered whether certain broad, all-inclusive language in an indemnity contract entered into between two corporate entities was "sufficiently all inclusive to include negligence of the [indemnitee]."  1979 WL 155686, at *2. Although the court applied strict construction, it noted that "Ohio cases do not require the negligence of the indemnitee be included by express language" and found that "all liabilities, claims or demands" was sufficient to meet the strict construction requirement.  <u>Id.</u> at *3–4.  The court:

> concluded[d] that the language, "to indemnify and protect the buyer against all liabilities, claims or demands for injuries or damages to any person or property growing out of the performance of this contract by seller, its servants, employees, agents or representatives," clearly and unequivocally is unqualified and includes negligence by all, including that of the buyer.  The final phrase which mentions the seller or its agents refers to the performance of the work and does not modify or alter the intent expressed in the preceding portion of the sentence.

<u>Id.</u> at *4.  Accordingly, the court determined that the provision allowed the buyer to be indemnified for a claim against it where the injuries at issue were caused by the negligence of the buyer.  <u>See id.</u> at *1.  Similarly, the provision at issue here just says "claims"[5] and is "plain, unequivocal and definite."  <u>Id.</u> at *3.  In its plain and ordinary sense, "claim" means "[a] demand for money, property, or a legal remedy to which one asserts a right."  Black's Law Dictionary (9th ed. 2009); <u>see</u> <u>Westport Ins. Corp. v. Coffman</u>, No. C2-05-1152, 2009 WL 243096, at *6–7 (S.D. Ohio Jan. 29, 2009) (noting that the Ohio Supreme Court has used dictionaries to determine the definition of a word in a contract and "[d]ictionary definitions can aid in

_____

[5] The Court notes that unlike in <u>Delco</u>, the word "all" does not modify "claims by any third party."  However, the Court does not find the absence of "all" to be material because "claims" is unqualified and therefore is similarly unlimited.

determining a term's plain and ordinary meaning" (alteration in original) (quoting <u>Stiriz v. Motorists Mut. Ins. Co.</u>, No. F-01-010, 2002 WL 479826, at *6 (Ohio Ct. App. Mar. 29, 2002)) (internal quotation marks omitted)).  Like in <u>Delco</u>, the reference to "buyer" or C.A.I. following "arising out of" refers to the "use, storage, handling or resale of the [Chemicals]" and does not alter the intent expressed in "claims."  Accordingly, this provision, which simply provides that C.A.I. "agrees to defend, indemnify and hold [Ashland] harmless against claims by any third party (including [C.A.I.'s] employees and customers)," does provide coverage for claims asserting injuries as a result of Ashland's negligence, so long as the claims also arise out of C.A.I.'s conduct.

The <u>Riva</u>, <u>Vigilant</u> and <u>Savini</u> Plaintiffs rely upon <u>Borden Chemical, Inc. v. Jahn Foundry Corp.</u>, 64 Mass. App. Ct. 638 (2005), to argue that Ashland should not be able to shift all of its liability for its own negligence onto C.A.I. through "a back of the invoice 'indemnity' term[ ]." <u>Vigilant</u> Decl. J. Opp. at 4; Pls.' Opp. to Ashland's Mot. for Decl. J., <u>Savini</u>, D. 54 at 1; Pls.' Opp. to Ashland's Mot. for Decl. J., <u>Riva</u>, D. 102 at 5.  In <u>Borden</u>, the chemical supplier and buyer exchanged invoices and purchase orders over the years that contained competing language addressing liabilities, warranties and waivers in connection with the sale of chemicals.  64 Mass. App. Ct. at 639–40.  The chemical supplier's invoices contained an indemnification provision that shifted all risk of loss to the buyer.  <u>Id.</u> at 639.  The court held that this indemnification provision was a "material alteration" to the terms of the purchase orders and thus did not become part of the parties' sales contract.  <u>Id.</u> at 645.  The court's holding that the buyer was not bound by the indemnification provision was not based on an interpretation of the indemnification provision, but rather upon a determination that the indemnification provision was not part of the parties' contract.  <u>Id.</u> at 647.  Accordingly, the plaintiffs' reliance on <u>Borden</u> is misplaced

because this is not a case involving a "battle of the forms."  Here, unlike <u>Borden</u>, there is no evidence of an exchange of forms between C.A.I. and Ashland that contained competing or incongruous terms and there is no disagreement that the indemnification provision at issue is present in the Sales Contracts and uncontroverted by any other term contained in any other agreement between C.A.I. and Ashland.

Based on the foregoing, the indemnification provision is valid and is triggered by claims arising out of C.A.I.'s use, storage, handling or resale of the Chemicals, whether C.A.I. is acting alone or concurrently or jointly with another entity.  The language is also sufficiently inclusive to include claims alleging negligence on the part of the indemnitee Ashland, assuming there is a finding that such claims arise out of C.A.I.'s use, storage, handling or resale of the Chemicals. Therefore, the Court GRANTS Ashland's motions for declaratory judgment to the extent that Ashland seeks a determination that the indemnification provision is triggered by C.A.I.'s joint/concurrent conduct and covers claims seeking to hold Ashland liable for its own negligence where such claims arise out of C.A.I.'s use, storage, handling or resale of the Chemicals.

### 3.    *Determination of Duty to Indemnify is Premature*

However, the Court denies Ashland the remaining relief it seeks.   Ashland further requests a declaration based upon the pleadings in <u>Riva</u>, <u>Vigilant</u> and <u>Savini</u> that it is entitled to indemnification from C.A.I. for the claims asserted by the plaintiffs.  However, under Ohio law, the "duty to indemnify arises from the conclusive facts and resulting judgment" of the underlying action.[6] <u>Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.</u>, 861 N.E.2d 121, 127 (Ohio 2006).

---

[6] Under Ohio law, courts construe insurance and non-insurance contracts providing for indemnification the same way.  <u>See</u> <u>Ferro Corp. v. Cookson Grp., PLC</u>, 585 F.3d 946, 951 n.3 (6th Cir. 2009) (court applies insurance law principles to a case involving the interpretation of an indemnity provision in an asset purchase agreement); <u>Bank One, N.A. v. Echo Acceptance Corp.</u>, 522 F. Supp. 2d 959, 966, n.3 (S.D. Ohio 2007) (noting that an insurance policy and an

Thus, C.A.I.'s obligation to indemnify Ashland will be determined by the facts as they unfold at trial or in a settlement agreement, rather than simply the pleadings, and cannot be triggered until Ashland's liability has been determined.  See Bank One, 522 F. Supp. 2d at 971 (to determine whether a party has a contractual duty to indemnify the indemnitee for an underlying claim that settled, the court must look to the basis of the settlement and cannot merely rely on the pleadings); Elevators Mut. Ins. Co. v. Scassa, No. 03CA0045, 2004 WL 1463040, at *3 (Ohio Ct. App. June 30, 2004) (explaining that "until liability is actually imposed on [the insured parties], one cannot reach a determination as to whether [the insurer] has a duty to indemnify these parties"); Chemstress Consultant Co., Inc. v. Cincinnati Ins. Co., 715 N.E.2d 208, 212 (Ohio Ct. App. 1998) (determining whether there is a duty to indemnify "require[s] additional information" beyond the "allegations in the complaint" such as "proof of the actual facts underlying . . . the complaint").  As previously discussed, indemnification of Ashland will turn on whether those claims seeking to hold Ashland liable for its conduct arise out of C.A.I.'s use, storage, handling or resale of the Product.  Because the underlying lawsuits between Ashland and the Riva, Vigilant and Savini Plaintiffs have not reached their conclusions or been otherwise resolved, the Court cannot determine at this time whether C.A.I. has a duty to indemnify Ashland.  Therefore, the Court DENIES Ashland's motion for declaratory judgment to the extent Ashland seeks a declaration that it is contractually entitled to indemnification from C.A.I. for the plaintiffs' claims.

**B.      Ashland's Motions for Summary Judgment on all the Plaintiffs' Claims**

In all three actions, Ashland has filed motions for summary judgment on all counts of the Riva, Vigilant and Savini complaints.  Riva Mot. for Summ. J.; Vigilant Mot. for Summ. J.;

---

indemnity agreement are analogous for the purposes of a breach of contract action for indemnification of a settled claim), aff'd, 380 F. App'x 513 (6th Cir. 2010).

*Savini* Mot. for Summ. J.   The foregoing motions raise the same issues of the application and effect of the terms of the Sales Contracts and the doctrine of circular indemnity, and therefore the court will address these motions together.

1.      *Ashland is Not Entitled to Summary Judgment on the Basis of*
        *Paragraphs 8 and 9 in the Sales Contracts*

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); Coffin v. Bowater, Inc., 501 F.3d 80, 85 (1st Cir. 2007).  "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law."  Am. Steel Erectors, Inc. v. Local Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)) (internal quotation mark omitted).

Ashland's motions for summary judgment in all three actions are based in part on the applicability of paragraph 8 of the Sales Contracts, which provides that "[C.A.I.] will comply with all laws, rules and regulations pertaining to handling of the [Chemicals], and [C.A.I.] assumes all risks and liability arising out of its use, storage, handing and resale of the [Chemicals]."  Sales Contracts at 3 ¶ 8.  Ashland argues that pursuant to this provision of the Sales Contracts, C.A.I. has assumed all liability for the Riva, Vigilant and Savini Plaintiffs' claims and thus Ashland cannot be liable to the plaintiffs.  Riva, D. 86 ("Riva Summ. J. Mem.") at 12–13; Vigilant, D. 30 ("Vigilant Summ. J. Mem.") at 10–11; Savini, D. 50 ("Savini Summ. J. Mem.") at 12.  Summary judgment cannot be granted to Ashland on this basis because at this point in the litigation there has been no discovery beyond the allegations in the complaint and no judgment against Ashland. Thus, issues of material fact — proof of the facts underlying the plaintiffs' complaints and liability of the respective parties — remain.  Furthermore, the Sales Contracts are between C.A.I.

and Ashland and paragraph 8 shifts liability only as between themselves.  Samadder v. DMF of Ohio, Inc., 798 N.E.2d 1141, 1147 (Ohio Ct. App. 2003) (noting that "a contract is binding only upon parties to a contract and those in privity with them").  Ashland has offered no basis to conclude that this case is not subject to the general principle that "a contract cannot bind a nonparty," E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 (2002), such that Ashland cannot be liable to the plaintiffs.  See Miles v. Naval Aviation Museum Found., Inc., 289 F.3d 715, 720 (11th Cir. 2002) (citing Waffle House and holding that a contract whereby the Foundation agreed to "hold [the Government] harmless from any and all loss or liability (whether in tort or in contract) which might arise from the use of the equipment exchanged under [the] contract," id. at 717 (alteration in original), did not affect the plaintiff's claim against the Government because the plaintiff was not a party to the contract); Carnahan v. Weeks, No. 17302, 1999 WL 317192, at *9 (Ohio Ct. App. May 21, 1999) (considering the defendant's argument that a nonparty was a third party beneficiary under a contract that states that "Seller and Co-owner agree to assume all liability and hold Buyer harmless from any and all [taxes liabilities]" such that the seller and co-owner would be liable to the nonparty for tax liabilities).

Ashland's additional argument in Vigilant that it is entitled to summary judgment because the indemnification provision in paragraph 9 of the Sales Contracts requires C.A.I. to indemnify Ashland for the Vigilant Plaintiffs' claims is similarly unpersuasive.  See Vigilant Summ. J. Mem. at 11–16.  As discussed above, a determination of C.A.I.'s duty to indemnify is premature.  Furthermore, even if Ashland were entitled to indemnification for the Vigilant Plaintiffs' claims pursuant to the terms of the Sales Contracts, that would not eliminate the Vigilant Plaintiffs' right to recovery against Ashland because "[i]ndemnification is merely a tool for allocating costs between contracting parties."  Battelle Mem'l Inst. v. Nowsco Pipeline

Servs., Inc., 56 F. Supp. 2d 944, 951 (S.D. Ohio 1999) (internal quotation marks omitted). "Indemnity . . . is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." Worth, 513 N.E.2d at 256. The concept of indemnification assumes that the indemnitee has been held liable, i.e., "compelled to pay." Therefore, it does not follow that an indemnitee who is entitled to reimbursement for liability to a third party cannot be liable to that third party in the first place.

2.    *Ashland is Not Entitled to Summary Judgment on the Basis of Circular Indemnity*

In Savini, Ashland also argues that it is entitled to summary judgment because the Savini Plaintiffs' claims are barred by the doctrine of circular indemnity or circuity of action as a result of their status as Trust beneficiaries. Savini Summ. J. Mem. at 12–19. Ashland makes this same argument in Riva with regards to Sentry's claims.[7] Riva Summ. J. Mem. at 13–19. Ashland asserts that since C.A.I. is obligated to indemnify Ashland for any liability it may have to the Riva and Savini Plaintiffs, Sentry and the Savini Plaintiffs, as Trust beneficiaries, are obligated pursuant to the Settlement Agreement to indemnify C.A.I. for that same liability. Savini Summ. J. Mem. at 18; Riva Summ. J. Mem. at 17–19. As a result, Sentry and the Savini plaintiffs "are essentially proceeding against themselves by virtue of the circular indemnity, which is not permitted under the law." Savini Summ. J. Mem. at 19; Riva Summ. J. Mem. at 19; see RFR Indus., Inc. v. Rex-Hide Indus., Inc., 222 F. App'x 973, 977–78 (Fed. Cir. 2007) (affirming summary judgment on circular indemnity grounds). However, because the determination of whether the Sales Contracts obligate C.A.I to indemnify Ashland is premature, the related inquiry of the applicability of the doctrine of circular indemnity is also premature.

---

[7] The Court in denying Riva, Sentry and Corrieri's motion for class certification recognized that Sentry was not a Trust beneficiary and thus would not be bound by the indemnification provision in the Settlement Agreement. Mem. & Order at 18.

Accordingly, based on the foregoing, the Court DENIES Ashland's motions for summary judgment in <u>Riva</u>, <u>Vigilant</u> and <u>Savini</u>.

**C.     Vigilant and Savini Plaintiffs' Motions to Strike Ashland's Third-Party Complaint Against C.A.I.**

The <u>Vigilant</u> and <u>Savini</u> Plaintiffs have filed motions to strike Ashland's third-party complaint against C.A.I. pursuant to Fed. R. Civ. P. 14(a)(4) on the basis that there is no theory on which C.A.I. may be liable to Ashland.   <u>Vigilant</u> Pls.' Mot. to Strike; <u>Savini</u> Pls.' Mot. to Strike.   In <u>Vigilant</u> and <u>Savini</u>, Ashland filed a third-party complaint against C.A.I. and asserted claims for contractual indemnification, common law indemnification, contribution and declaratory judgment as to C.A.I.'s obligation to indemnify Ashland.   <u>Vigilant</u> Third-Party Compl. ¶¶ 16–33; <u>Savini</u> Third-Party Compl. ¶¶ 16–33.  A "defending party may, as third-party plaintiff, serve a . . .  complaint on a nonparty who is or may be liable to it for all or part of the claim against it," Fed. R. Civ. P. 14(a)(1), and the court "should allow impleader on any colorable claim of derivative liability that will not unduly delay or otherwise prejudice the ongoing proceedings."  <u>Lehman v. Revolution Portfolio L.L.C.</u>, 166 F.3d 389, 393 (1st Cir. 1999); <u>see also</u> <u>Mass. Laborers' Health & Welfare Fund v. Varrasso</u>, 111 F.R.D. 62, 63 (D. Mass. 1986) (explaining that "[i]mpleader places the burden on the third-party plaintiff to show that if it is found liable to the plaintiff, then the third-party defendant will in turn be liable to the third-party plaintiff").  The <u>Vigilant</u> and <u>Savini</u> Plaintiffs' arguments that Ashland is barred from seeking contribution and tort-based indemnity from C.A.I. for the <u>Vigilant</u> and <u>Savini</u> actions are based on their own construction of C.A.I. and Ashland's respective conduct and liability and the actual facts have yet to be established.  <u>See</u> <u>Vigilant</u>, D. 15 ("<u>Vigilant</u> Mot. to Strike Mem.") at 5–7; <u>Savini</u>, D. 22 ("<u>Savini</u> Mot. to Strike Mem.") at 4–6.  The <u>Vigilant</u> and <u>Savini</u> Plaintiffs also argue that there is no basis for Ashland's contractual indemnification claim against C.A.I, <u>see</u>

<u>Vigilant</u> Mot. to Strike Mem. at 7–9; <u>Savini</u> Mot. to Strike Mem. at 6–9, but, given that this claim is necessarily dependent upon the "conclusive facts and resulting judgment" of the <u>Vigilant</u> and <u>Savini</u> actions, C.A.I. is properly a third-party defendant. <u>Pilkington</u>, 861 N.E.2d at 127. In light of the foregoing, the Court DENIES the motions to strike in <u>Vigilant</u> and <u>Savini</u>.

### D. <u>Savini Plaintiffs' Counterclaims Against C.A.I.</u>

#### 1. *Factual and Procedural Background*

In <u>Savini</u>, Ashland filed a third-party complaint against C.A.I. asserting claims for contractual indemnity pursuant to the Sales Contracts, common law indemnity, contribution and declaratory judgment. <u>Savini</u> Third-Party Compl. ¶¶ 16–33. C.A.I. defended itself against Ashland's third-party complaint, filed an answer and asserted a claim for contractual indemnity against the <u>Savini</u> Plaintiffs in accordance with the terms of the Settlement Agreement. C.A.I.'s Answer ¶¶ 21–24. C.A.I. alleges that the "duty to defend includes the obligation to pay C.A.I. legal fees and costs for attorneys of its own choosing." <u>Id.</u> ¶ 13. The <u>Savini</u> Plaintiffs admit that Ashland's third-party complaint against C.A.I. triggered the "Indemnification" provision in the Settlement Agreement and they have a duty to defend C.A.I. against Ashland's claims. <u>Savini</u> Pls.' Countercl. ¶ 22. This provision states:

> Each individual member of the Subrogated Group and Trust [all trust beneficiaries and representatives] (collectively, the "Indemnitors") agrees to defend, hold harmless and indemnify each of the Released Parties from any and all claims in the nature of third-party claims for indemnity or contribution which might be brought by Non-Released Parties against whom actions are brought by any individual Indemnitor to the extent that any such individual Indemnitor(s) initiated (or subsequently joined in) the litigation or claim against the Non-Released Party which, in turn, caused the contribution or indemnity claim to be brought against the Released Party.

Settlement Agreement § 5; <u>Savini</u> Pls.' Countercl. ¶ 11. On April 16, 2012, an attorney for the <u>Savini</u> Plaintiffs wrote a letter to counsel for C.A.I. stating that C.A.I. filed its answer to

Ashland's third-party complaint without giving the <u>Savini</u> Plaintiffs any notice, and that, pursuant to the terms of the Settlement Agreement, C.A.I. has a duty to allow the <u>Savini</u> Plaintiffs to defend C.A.I. against Ashland's claims.  April 16, 2012 Letter at 2–3.  The <u>Savini</u> Plaintiffs' attorney also demanded that C.A.I. withdraw or strike its answer, withdraw or dismiss its claim against the <u>Savini</u> Plaintiffs and "cease any further action in defense of Ashland's third party complaint as that is solely the responsibility and under the control of [the <u>Savini</u>] Plaintiffs."  <u>Id.</u> at 3.  Furthermore, counsel threatened that:

> [i]f [C.A.I.] does not comply with their duties as an Indemnitee and allow [the <u>Savini</u>] Plaintiffs to defend against Ashland's third party complaint, [the <u>Savini</u>] Plaintiffs will consider that [C.A.I.] has elected to defend itself and relieve [the <u>Savini</u>] Plaintiffs from any defense/indemnification obligation on the part of [the <u>Savini</u>] Plaintiffs regarding Ashland's contribution/indemnification claims against [C.A.I.] arising out of [the <u>Savini</u>] Plaintiffs' action against Ashland.

<u>Id.</u> at 4.

The next day, counsel for the <u>Savini</u> Plaintiffs delivered to C.A.I. the answer the <u>Savini</u> Plaintiffs intended to file on C.A.I.'s behalf and reiterated the <u>Savini</u> Plaintiffs' position that if "C.A.I. does not comply with its indemnitee duties and continues to materially interfere with Plaintiffs' ability to defend and indemnify C.A.I. from Ashland's third party complaint, then Plaintiffs will consider that C.A.I. has elected to relieve Plaintiffs of whatever indemnitor obligations exist under the Borelli Settlement and seek the appropriate relief."  April 17, 2012 e-mail.  Counsel for C.A.I. responded that C.A.I. would not withdraw its answer and claim against the <u>Savini</u> Plaintiffs because "the fact that your clients have now assumed an indemnification obligation in <u>Savini</u> in no way precludes C.A.I. from protecting its own interests."  C.A.I.'s April 17, 2012 Letter at 2.  C.A.I.'s counsel also pointed out that the <u>Savini</u> Plaintiffs "<u>filed this case in the first place</u> and are therefore in a position to exercise direct control over it and over the extent of their indemnity obligation."  <u>Id.</u> (emphasis in original).

On April 20, 2012, the Savini Plaintiffs filed an answer to C.A.I.'s contractual indemnification claim against them and asserted counterclaims for declaratory judgment that they are relieved from any indemnity obligations pursuant to the Settlement Agreement (Count I), breach of the Settlement Agreement (Count II) and violation of Mass. Gen. L. c. 93A (Count III).  Savini Pls.' Countercl. ¶¶ 51–58.  C.A.I. has now filed a motion to dismiss the Savini Plaintiffs' counterclaim.  See C.A.I.'s Mot. to Dismiss.  The Savini Plaintiffs opposed the motion and filed a cross-motion for judgment on the pleadings as to their counterclaims against C.A.I.  See Pls.' Mot. for J. on the Pleadings.

### 2.   *Standard of Review*

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a counterclaim must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "The Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the counterclaim and matters of which judicial notice can be taken."  W. World Ins. Co., Inc. v. Czech, 275 F.R.D. 59, 61 (D. Mass. 2011) (citing Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000)).  "[W]hen 'a complaint's factual allegations are expressly linked to — and admittedly dependent upon — a document (the authenticity of which is not challenged),' then the court can review it upon a motion to dismiss."  Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 34 (1st Cir. 2001) (quoting Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)).  The Court must accept all the non-conclusory factual allegations in the counterclaim as true, Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011), and "draw all

reasonable inferences in favor of the [counterclaimant]." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).

Fed. R. Civ. P. 12(c) permits a party to move for judgment on the pleadings any time "[a]fter the pleadings are closed — but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Because such a motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof." R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006). Furthermore, "a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Patrick v. Rivera-Lopez, No. 12-2413, 20013 WL 388053, at *2 (1st Cir. Feb. 1, 2013) (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006)) (internal quotation mark omitted).

### 3. Discussion

#### a. The Savini Plaintiffs' Counterclaims are not Released by the Settlement Agreement

C.A.I. argues that the counterclaims the Savini Plaintiffs assert against C.A.I. must be dismissed because they are foreclosed by the terms of the Settlement Agreement. Mem. in Supp. of C.A.I.'s Mot. to Dismiss, Savini, D. 30 ("C.A.I.'s Mot. to Dismiss Mem.") at 5–6. The Settlement Agreement specifies that it is to be governed by Massachusetts law. Settlement Agreement ¶ 15 (providing that the Agreement "shall be interpreted in accordance with, and all disputes relating to or arising from this Agreement shall be governed by, the law of the Commonwealth of Massachusetts"); see ePresence, Inc. v. Evolve Software, Inc., 190 F. Supp. 2d 159, 162 (D. Mass. 2002) (noting that "absent exceptional circumstances or a manifest public policy conflict, Massachusetts courts honor contractual choice-of-law provisions"). Under

Massachusetts law, "[a] settlement agreement is a contract and its enforceability is determined by applying general contract law." Sparrow v. Demonico, 461 Mass. 322, 327 (2012).

Pursuant to the "Full and Complete Release of All Claims" provision in the Settlement Agreement, the Savini Plaintiffs agreed to "forever release, remit, and discharge" C.A.I. "from and against any and all Claims arising out of or relating in any way to the Explosion." Settlement Agreement ¶ 4. Furthermore, this "release is intended to be, and is, a full and general release of all Claims against [C.A.I.] . . . and shall be broadly construed in favor of [C.A.I.]." Id. The Savini Plaintiffs' counterclaims against C.A.I. seek to establish the parties' respective obligations pursuant to the Indemnification provision of the Settlement Agreement. See Savini Pls.' Countercl. ¶¶ 51–58. C.A.I. argues that the express terms of the release provision preclude these claims because the underlying claims against Ashland arise directly from the explosion and the subsequent motions — Ashland's third-party claim against C.A.I., C.A.I.'s claim against the Savini Plaintiffs and the Savini Plaintiffs' counterclaim against C.A.I. — "would not exist but for the Plaintiffs' underlying claims, which themselves would not exist but for the explosion." C.A.I.'s Mot. to Dismiss Mem. at 6.

The Court declines to adopt C.A.I.'s expansive interpretation of the Settlement Agreement because this construction runs contrary to the general principles of contract construction that "a contract must be read as a whole," Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 160 (1st Cir. 2005), and "[e]very word and phrase must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." Jacobs v. U.S. Fid. & Guar. Co., 417 Mass. 75, 77 (1994) (alteration in original) (quoting Wrobel v. Gen. Accident Fire & Life Assurance Corp., 288 Mass. 206, 209–10 (1934)) (internal

quotation marks omitted).  The Settlement Agreement also contains a "Confidentiality" provision

that provides:

> The terms and conditions of this [Agreement], and the fact of the settlement
> described herein shall not be disclosed to any Person other than the Court, the
> Parties and their respective counsel until the issuance of a Joint Press Release . . .,
> except as may be required by . . . a proceeding to enforce the terms of this
> Agreement.

Settlement Agreement ¶ 8.  This provision expressly contemplates suits to enforce the terms of

the Settlement Agreement.  Although the release provision is broad, an interpretation that would

eliminate the ability of the <u>Savini</u> Plaintiffs to sue to enforce the terms of the contract would

render this provision of the contract unnecessary or superfluous.  <u>See</u> <u>Given v. Commerce Ins.</u>

<u>Co.</u>, 440 Mass. 207, 209 (2003) (noting that a court interpreting a contract must give "full effect

to the document as a whole"); <u>Jacobs</u>, 417 Mass. at 77 (explaining that "[a]n interpretation which

gives a reasonable meaning to all of the provisions of a contract is to be preferred to one which

leaves a part useless or inexplicable" (alteration in original) (quoting <u>Sherman v. Emp'rs' Liab.</u>

<u>Assurance Corp., Ltd.</u>, 343 Mass. 354, 357 (1961)) (internal quotation marks omitted)).

Accordingly, the Court holds that the <u>Savini</u> Plaintiffs' counterclaims seeking to enforce the

terms of the Settlement Agreement do not fall within the scope of the release provision of the

Settlement Agreement.

     b.   The "Duty to Defend" Includes the Right to Control the Defense

  The parties agree that the <u>Savini</u> Plaintiffs have a duty to defend (and ultimately

indemnify) C.A.I. against Ashland's third-party complaint, but disagree about what this duty to

defend entails.  <u>See</u> <u>Savini</u> Pls.' Countercl. ¶¶ 13, 22.  It is the <u>Savini</u> Plaintiffs' position that the

duty to defend entitles them to assume C.A.I.'s defense against Ashland and does not obligate

them to simply reimburse C.A.I. for the defense costs C.A.I. incurs in the course of defending

itself.   Mem. in Supp. of Pls.' Cross-Mot. for J. on the Pleadings, <u>Savini</u>, D. 34 at 11–12.

Therefore, the <u>Savini</u> Plaintiffs allege that C.A.I. has breached the Indemnification provision of

the Settlement Agreement by failing to give them notice of its intention to file an answer, failing

to give them an opportunity to file an answer on C.A.I.'s behalf, filing the answer and refusing to

withdraw its filing and seeking recovery for its legal fees and costs for its own attorneys.   <u>Savini</u>

Pls.' Countercl. ¶¶ 44–45.   According to the <u>Savini</u> Plaintiffs, this interference with their ability

to defend C.A.I. relieves them of any indemnification obligations under the Settlement

Agreement.   <u>Id.</u> ¶¶ 52–53.   As a practical matter, the <u>Savini</u> Plaintiffs' position is that C.A.I. is

free to defend itself now as it sees fit, but then is not free to seek from them reimbursement for

defense fees or indemnification if later found liable to Ashland under the Settlement Agreement.

The Settlement Agreement does not spell out in any detail what the Indemnitors' defense

obligations are and simply provides that they agree to "defend, hold harmless and indemnify"

C.A.I.   Settlement Agreement § 5.   However, under Massachusetts law, in general, once the duty

to defend has been triggered, the indemnitee must allow the indemnitor to take over the defense.

<u>See</u> <u>Consol. Hand-Method Lasting-Mach. Co. v. Bradley</u>, 171 Mass. 127, 132 (1898) (explaining

that the indemnitee "cannot insist upon retaining control of the defense, and yet hold the party

notified bound by the result of the suit"); <u>see also</u> <u>Federated Dep't Stores, Inc. v. J.D. Elec., Inc.</u>,

No. 87-0619-MC, 1989 WL 90432, at *2 (D. Mass. July 31, 1989) (adhering to the rule

announced in <u>Bradley</u>); <u>Pasquale v. Shore</u>, 343 Mass. 239, 243 (1961) (adhering to the rule

announced in <u>Bradley</u> and describing it as a "leading case on the subject" (citation omitted)).

Thus, in the usual duty-to-defend case, an indemnitee's failure to allow the indemnitor to take

charge of the defense relieves the indemnitor of its obligation to indemnify if liability is

established.   <u>See</u> <u>CSX Transp., Inc. v. Mass. Bay Transp. Auth.</u>, No. 06-40211-FDS, 2011 WL

3207770, at *5 (D. Mass. July 27, 2011) (explaining that "[u]nder Massachusetts law, an 'indemnitee need give the indemnitor merely notice and an opportunity to defend in order to bind the indemnitor to the result of a settlement or judgment concluded in the absence of the indemnitor'" (quoting Trustees of N.Y., N.H. & Hartford R.R. Co. v. Tileston & Hollingsworth Co., 345 Mass. 727, 732 (1963))).   C.A.I. argues that this is not a classic indemnification scenario because the Savini Plaintiffs "are in a position to exercise direct control over the extent of their indemnity obligation," but does not cite any authority for why the Court should deviate from the general rule in this case.  C.A.I.'s Mot. to Dismiss Mem. at 7.

Moreover, C.A.I. has not addressed whether there is a conflict of interest based on the admittedly unusual structure of this litigation that would permit C.A.I. to defend itself and pass along its reasonable defense costs to the Savini Plaintiffs.  Massachusetts courts recognize an exception to the indemnitor's usual right to control the defense where there is a conflict of interest between the indemnitee (C.A.I.) and the indemnitor (the Savini Plaintiffs), such as when an insurer seeks to defend the insured under a reservation of rights.  See Magoun v. Liberty Mut. Ins. Co., 346 Mass. 677, 684 (1964) (recognizing a conflict of interest between an insurer and insured where claims brought by an injured plaintiff against the insured may or may not lie within policy coverage and noting that "[w]here the insured's interest in controlling tort litigation against him conflicts with the similar interest of the insurer, the insured may have good cause to ask that he be represented by counsel independent of the insurer"); 14 Couch on Insurance § 202:23 (noting that the "most widely employed criterion" of whether there is a conflict of interest sufficient to call for insured's own counsel at the insurer's expense "appears to be whether . . . the insured's attorney would have an incentive to steer the facts of the [underlying] litigation to a conclusion which would benefit the insurer by avoiding or minimizing coverage,

while prejudicing the insured in some manner").  In such a case, the indemnitee may appoint

independent counsel, whose reasonable fees the indemnitor must pay.  Herbert A. Sullivan, Inc.

v. Utica Mut. Ins. Co., 439 Mass. 387, 406–07 (2003) (explaining that "[w]hen an insurer seeks

to defend its insured under a reservation of rights, and the insured is unwilling that the insurer do

so, the insured may require the insurer either to relinquish its reservation of rights or relinquish

its defense of the insured and reimburse the insured for its defense costs"); Watts Water Techs.,

Inc. v. Fireman's Fund Ins. Co., No. 05-2604-BLS2, 2007 WL 2083769, at *10 (Mass. Super.

July 11, 2007) (explaining that "[t]hrough its reservation of rights, the insurer's duty to defend is

transformed into a duty to reimburse its insured for reasonable attorney's fees incurred by the

insured's chosen counsel").  The policy concern is that when an insurer undertakes the insured's

defense, but reserves the right to later disclaim coverage should information subsequently

obtained warrant such a disclaimer, there is a conflict of interest between the insurer and the

insured because the insurer could structure its arguments and the court's findings in such a way

so as to render the claim outside of scope of coverage.  See Hartford Cas. Ins. Co. v. A & M

Assocs., Ltd., 200 F. Supp. 2d 84, 89–90 (D.R.I. 2002) (applying Massachusetts law).

No such conflict appears to exist here because the Savini Plaintiffs have a stronger

incentive to defend C.A.I. against Ashland's indemnification and contribution claims than C.A.I.

does (in light of the Savini Plaintiffs duty to indemnify C.A.I. pursuant to the Settlement

Agreement).  The parties' conduct thus far illustrates this fact:  whereas the Savini Plaintiffs have

attempted to frame their claims against Ashland so as to avoid triggering C.A.I.'s duty to

indemnify Ashland in the first place, C.A.I. has agreed with Ashland that it must indemnify

Ashland pursuant to the Sales Contracts (presumably intending to pass along to the Savini

Plaintiffs whatever liability it incurs).  See C.A.I. Resp., Savini, D. 55 ¶ (b) ("C.A.I. agrees that it

is obligated to indemnify Ashland for all claims asserted by the Plaintiff in the [Savini] matter pursuant to Ashland's third-party claim for contractual indemnity against C.A.I.").   Indeed, despite its references to the Savini Plaintiffs' ability to "control" the extent of their own indemnity obligation, C.A.I. has not identified any steps they could take that would prejudice C.A.I.'s interests here.   Based on the current record and given the dearth of authority and explanation asserted by C.A.I. on this point, there appears to be no justification for C.A.I. to refuse to allow them to take over its defense against Ashland's third-party claim and instead insist that they pay C.A.I.'s defense costs.[8]

The Savini Plaintiffs also allege that C.A.I.'s conduct constitutes a violation of Mass. Gen. L. c. 93A, Savini Pls.' Countercl. ¶¶ 56–58, but they have offered no argument on this claim in their motion.   Accordingly, the Savini Plaintiffs have not satisfied their burden of establishing that they are entitled to judgment on the pleadings on this claim.

The Court DENIES C.A.I.'s motion to dismiss and GRANTS the Savini Plaintiffs' motion for judgment on the pleadings as to counts I and II and DENIES it as to count III.

---

[8] In support of its argument that the Savini Plaintiffs must reimburse C.A.I. for its attorney's fees, C.A.I. cites cases for the proposition that parties may provide by agreement that one party is responsible for the other's attorney's fees.   See Savini, D. 39 ("C.A.I.'s Opp.") at 2; e.g., Carter v. Warren Five Cents Sav. Bank, 409 Mass. 73, 80 (1991); Leventhal v. Krinsky, 325 Mass. 336, 341 (1950).   However, unlike the case here, those cases concern agreements that explicitly provide for the reimbursement of attorney's fees.   See Carter, 409 Mass. at 80 (enforcing provision by which a party agreed to pay "[a]ny legal expenses incurred by the Executive in enforcing his rights . . . under this Agreement" (alteration in original)); Leventhal, 325 Mass. at 336 (considering a note that provided for the payment of the principal sum of the note "together with all costs and all legal expense for the enforcement and collection hereof").   Here, the Settlement Agreement does not provide that the Indemnitors are responsible for reimbursing C.A.I. for its defense costs if it seeks to defend itself against a third-party claim.   As discussed above, the duty to defend generally means the indemnitor has the right to assume the indemnitee's defense and C.A.I. has not adequately shown why that should not be the case here. C.A.I. also argues that the obligation for the Savini Plaintiffs to reimburse C.A.I.'s attorney's fees incurred in defending itself is encompassed in the term "hold harmless." C.A.I.'s Opp. at 2. However, this argument fails to account for the fact that the reason C.A.I. has been "forced to expend substantial legal fees," id., in defending against Ashland's third-party claim is because it refused to allow assumption of its defense pursuant to the Settlement Agreement.

**IV.     Conclusion**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Ashland's motions for declaratory judgment in <u>Riva</u>, D. 82, <u>Vigilant</u>, D. 32, and <u>Savini</u>, D. 52.  The Court DENIES Ashland's motions for summary judgment in <u>Riva</u>, D. 84, <u>Vigilant</u>, D. 29, and <u>Savini</u>, D. 48.  The Court DENIES the plaintiffs' motions to strike in <u>Vigilant</u>, D. 14, and <u>Savini</u>, D. 21. In <u>Savini</u>, the Court DENIES C.A.I.'s motion to dismiss, D. 29, and GRANTS the <u>Savini</u> Plaintiffs' motion for judgment on the pleadings, D. 33, as to counts I and II and DENIES that motion as to count III.

**So ordered.**

/s/ Denise J. Casper
United States District Judge